NO. 07-02-0345-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 9, 2003



______________________________




HERIBERTO RAMIREZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B 13736-0005; HONORABLE ED SELF, JUDGE



_______________________________






Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Following his plea of not guilty, appellant Heriberto Ramirez appeals his conviction
for aggravated sexual assault and 50 year sentence. Presenting five points, he alleges
(1) the trial court erred in denying his motion for mistrial; (2) the trial court erred in denying
his motion to reopen the evidence; (3) prosecutorial misconduct during voir dire; (4) the
jury verdict is against the overwhelming weight of the evidence; and (5) ineffective
assistance of counsel. Based upon the rationale expressed herein, we affirm.

 On March 28, 2000, the victim's mother, who is disabled and uses a wheelchair, 
asked Virginia Chavez to look for her daughter because she had not come home after
school. After Virginia picked up the victim at a friend's house, Virginia asked the victim
why she had not gone home. The victim replied that an after school activity had been
cancelled so she chose to go home with friends. As they approached the victim's home,
the victim became nervous, started crying, and told Virginia she had been sexually
assaulted by appellant. Among other things, she told Virginia appellant forced her to have
intercourse when her mother was out of the room or in the bathtub. When Virginia took
the victim home, she called the victim's uncle who came to her house and talked to the
victim. After the victim explained what happened, the family took her to the hospital. An
aunt of the victim who met with her at the hospital described her as "crying, shaking,
upset."

 We commence our analysis by first considering appellant's fourth point by which he
contends the verdict is against the overwhelming weight of the evidence so as to be
manifestly unjust. We disagree. In determining the factual sufficiency of the evidence, the
Court of Criminal Appeals has directed us to ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the fact finder's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual
sufficiency formulation); see also King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). 
Accordingly, we will reverse the fact finder's determination only if a manifest injustice has
occurred. Johnson, 23 S.W.3d at 12. In conducting this analysis, we may disagree with
the jury's determination, even if probative evidence supports the verdict, but must avoid
substituting our judgment for that of the fact finder. See Santellan v. State, 939 S.W.2d
155, 164 (Tex.Cr.App. 1997). 

 Although appellant admits the victim testified that he placed his sexual organ in her
"front" part on three occasions, that she told Virginia about the assaults on March 28,
2000, and that the presence of scars evidencing a sexual assault were confirmed by a
sexual assault nurse, he contends the evidence is factually insufficient. In this regard, he
argues (1) the victim's testimony was based on leading questions, (2) the nurse did not
know whether the penetration was done by another male or type of object, (3) although her
testimony was admitted by the court, appellant nevertheless questioned the qualifications
of the nurse, (4) that the victim's mother testified she did not notice any blood on any bed
sheets or any clothes when she did the laundry, and (5) that the family had not detected
the victim acting out of the ordinary or demonstrating any unusual behavior before her
outcry. Deferring to the jury's determination concerning the weight of the evidence, we do
not conclude the evidence standing alone is so "weak as to be clearly wrong and
manifestly unjust." Accordingly, appellant's fourth point is overruled. 

 By his second point, appellant contends the trial court erred in denying his motion
to reopen the evidence after the parties had closed because clearly material evidence
could have changed the case in appellant's favor. We disagree. Pursuant to article 36.02
of the Texas Code of Criminal Procedure, the trial court shall allow the introduction of
testimony at any time before argument is concluded. The article applies only if the
proffered evidence "would materially change the case in the proponent's favor." Peek v.
State, 106 S.W.3d 72, 79 (Tex.Cr.App. 2003). The trial court's denial of the motion to
reopen is reviewed for abuse of discretion. Thompson v. State, 480 S.W.2d 624, 629
(Tex.Cr.App. 1972).

 After both parties announced a close of the evidence, appellant sought to reopen
the evidence to demonstrate the victim's mother had told another person that she did not
believe the first report of the assault. In response, the State points out that at trial, the
mother testified that originally she did not believe the report, but changed her mind after
she visited with the nurse. In overruling the motion, the trial court announced:

 Well, it seems to me, Mr. Lopez, that the issue of whether or not Felipe
believed her daughter at first or didn't believe her daughter at first, is before
the jury. I think there's adequate evidence of that, so I'm going to deny your
motion to reopen.


Even though evidence may be relevant, the rule does not require the admission of
"needless presentation of cumulative evidence." Tex. R. Evid. 403; see also Salazar v.
State, 38 S.W.3d 141, 155 n.7 (Tex.Cr.App. 2001), cert. denied, 534 U.S. 855, 122 S.Ct.
127, 151 L.Ed.2d 82 (2001). Because there was sufficient evidence to support counsel's
jury argument that the victim's mother did not believe the initial reports of the assault,
appellant has failed to demonstrate an abuse of discretion. Appellant's second point is
overruled.

 By his third point, appellant contends that although not properly preserved for
appellate review, the State's voir dire training of potential jurors to avoid being stricken
from the jury panel and other acts of prosecutorial misconduct require reversal as
fundamental error. We disagree. The control of voir dire examination is within the sound
discretion of the trial court. See McCarter v. State, 837 S.W.2d 117, 119 (Tex.Cr.App.
1992) (en banc). Although a defendant's constitutional right to counsel includes counsel's
right to question prospective jurors during the jury selection stage, appellant does not
contend that his right to conduct examination of the prospective jurors was limited. See
Brumley v. State, 804 S.W.2d 659, 662 (Tex.App.--Amarillo 1991, no pet.). Instead, he
contends the prosecutor's training of venire persons on how to respond to valid questions
rather than just asking the questions constituted fundamental error. 

 Article 35.17 of the Code recognizes that the trial court has discretion in the conduct
of voir dire examination. The voir dire process is "designed to insure, to the fullest extent
possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the
duty assigned to it." Armstrong v. State, 897 S.W.2d 361, 363 (Tex.Cr.App. 1995) (en
banc). Appellant does not argue that the prosecutor's questions improperly sought to
inflame any bias or prejudice of the prospective jurors nor that they constituted an improper
appeal to ignore any of appellant's constitutional rights. Counsel's conduct and the court's
supervision of voir dire is subjective and case specific and we decline to attempt to "micro
manage" that stage of the trial and accordingly, can only review it for abuse of discretion. 
Appellant does not contend the trial court abused its discretion. Considering that appellant
does not contend that any of his constitutionally guaranteed rights were implicated by the
alleged erroneous voir dire, his third point is overruled. 

 By his first point, appellant contends the trial court erred in denying his motion for
mistrial after the State inserted appellant's status as an illegal alien into the case without
reason and contrary to our decision in the prior case. (1) We disagree. The State called
Mitchell Matthews as a witness. (2) During his brief testimony, (3) he testified that on the night
of the offense, he visited with the nurse at the hospital. Then, when asked by the
prosecutor what he did after visiting with the nurse, he testified:

 I contacted my captain and advised that we did appear to have a sexual
assault, and advised him that our suspect was an illegal immigrant in Texas. 
 

Appellant's counsel promptly objected to the testimony as being irrelevant which was
sustained. Also, the trial court granted counsel's motion to strike the answer but denied
counsel's motion for mistrial. After the witness was excused and the jury was granted a
recess, appellant's counsel re-urged the motion for mistrial. In response, the prosecutor
advised the court he had previously admonished the witness to avoid making any
reference to appellant's status as an illegal alien, but did not have time before calling the
witness to remind him of the admonishment. After denying the motion for mistrial again
by implication, the trial court said:

 All right. Do you wish any further instruction, Mr. Lopez, from the court to the
jury, to disregard any kind of reference to the immigration status?


In response, trial counsel replied:


 No, Sir. I think at that point it would be maybe to recall something I'm hoping
that they forget.


 The denial of a motion for mistrial is reviewed under an abuse of discretion
standard. Trevino v. State, 991 S.W.2d 849, 851 (Tex.Cr.App. 1999). Where the decision
to deny a motion for mistrial is within the zone of reasonable disagreement, an abuse of
discretion is not shown. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Cr.App. 1990). 
Here, after the single reference to appellant's status as an illegal alien, it was not
mentioned again. Moreover, the trial court asked counsel if he desired an instruction to
the jury to disregard the comment, but counsel preferred that no instruction be given. As
in Richards v. State, 912 S.W.2d 374 (Tex.App.--Houston [14th Dist.] 1995, pet. ref'd) and
Sperling v. State, 924 S.W.2d 722 (Tex.App.--Amarillo 1996, pet. ref'd), because the
reference was an isolated reference, we conclude that an instruction to disregard would
have been sufficient and thus conclude the trial court did not abuse its discretion in
denying the motion for mistrial. Appellant's first point is overruled.

 By his fifth and final point, appellant contends his trial counsel was ineffective in
presenting his case by failing to perform at an objectively reasonable level, and but for trial
counsel's non-strategical errors the verdict is questionable. We disagree. A claim of
ineffective assistance of counsel is reviewed under the standard set out in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (4) Under Strickland, a
defendant must establish that (1) counsel's performance was deficient (i.e., fell below an
objective standard of reasonableness), and (2) there is a reasonable probability that but
for counsel's deficient performance, the result of the proceeding would have been different,
a reasonable probability being a probability sufficient to undermine confidence in the
outcome. Rylander v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); see also
Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, appellant
must demonstrate that the deficient performance prejudiced his defense. Mitchell v. State,
68 S.W.3d 640, 642 (Tex.Cr.App. 2002). Failure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness claim. Garcia v.
State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), cert. denied, 514 U.S. 1021, 115 S.Ct.
1368, 131 L.Ed.2d 223 (1995). 

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Although the
constitutional right to counsel ensures the right to reasonably effective counsel, it does not
guarantee errorless counsel, whose competency or accuracy of representation is to be
judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); see also
Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial
counsel's representation is highly deferential and presumes that counsel's conduct fell
within the wide range of reasonable and professional representation. Bone v. State, 77
S.W.3d 828, 833 (Tex.Cr.App. 2002); see also Mallett v. State, 65 S.W.3d 59, 63
(Tex.Cr.App. 2001). Also, any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999).

 Before we commence our analysis of appellant's argument, we first focus on the
presumption that counsel's conduct fell within the wide range of reasonable and
professional representation. After his first conviction, appellant retained counsel to
represent him on direct appeal. Then, upon retrial, appellant again retained his appellate
counsel to represent him in his second trial presently under review with the assistance of
appointed counsel. By the reporter's record of the first trial and first appeal, counsel had
the uncommon opportunity to analyze the trial tactics of counsel at the first trial and to
develop his trial tactics by his knowledge of the evidence and the tactics of counsel for the
State and appellant at the first trial. 

 Appellant identifies numerous instances of alleged error which he claims
demonstrates he was denied effective assistance of counsel, to-wit:.


 Failure to have bench conferences recorded. Failure to request that
voir dire proceedings or bench conferences be recorded does not
constitute ineffective assistance as a matter of law. See Oliva v.
State, 942 S.W.2d 727, 733 (Tex.App.--Houston [14th Dist.] 1997,
pet. dism'd, 991 S.W.2d 803 (Tex.Cr.App. 1998).

 Leading question to 12 year old victim. In cases dealing with child
victim/witness, the rule against leading questions is relaxed. 
Rodriguez v. State, 997 S.W.2d 640, 643 (Tex.App.-Corpus Christi
1999, no pet.).

 Expert testimony bolstering victim's credibility. Results of nurse's
physical examination of victim not implicated. Schutz v. State, 957
S.W.2d 52, 69 (Tex.Cr.App. 1997) (en banc), cited by appellant not
applicable because it is limited to expert testimony on truthfulness
because it was in part based on a belief that psychology is not an
exact science.

 Failure to call an expert without prior notice. Counsel references
nothing to show that even if called, expert testimony would have
been beneficial to appellant's position. Moreover, because the nurse
was called at the first trial, counsel had actual notice that she would
probably be called at the second trial.

 Failure to prevent receipt of improper evidence. Apparently appellant
argues that evidence of his residence in a Hispanic community was
received and was harmful. However, because the trial court
appointed interpreters and other factors, the jury was aware of these
factors. 



Appellant's last two concerns, i.e., prosecutorial misconduct and counsel's opening of the
door and failing to shut it present matters which are extremely subjective and not readily
subject to any objective analysis. According to appellant, the "door was opened" regarding
his alcohol use when trial counsel tried to have a State's witness admit she did not like
him. However, it did demonstrate that the witness did not like him which the jury could
consider in determining her credibility. Regarding the alleged misconduct of the
prosecutor, appellant does not allege he made any appeal to race, religion, nationality, or
made any plea to inflame the minds of the jury. Even though some of the references to
appellant's state of undress, etc. might be considered to be in bad taste, appellant cites
no authority and we have found none which would prohibit any such argument considering
the charged offense and circumstances in the victim's home. Concluding that counsel's
performance was not deficient, appellant's fifth point is overruled. 

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice

 

Do not publish. 
1. See Ramirez v. State, 65 S.W.3d 156 (Tex.App.--Amarillo 2001, pet. ref'd).
2. At the time of the offense, Matthews was an officer with the Plainview Police
Department. At the time of the second trial, he was employed as an officer with the
Amarillo Police Department.
3. Testimony covered only five pages of the reporter's record.
4. The Court of Criminal Appeals has overruled both Ex parte Duffy, 607 S.W.2d 507,
516 (Tex.Cr.App. 1980) and Ex parte Cruz, 739 S.W.2d 53 (Tex.Cr.App. 1987) by its
decision in Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App. 1999).



ght: 0.416667in">          The argument before us was founded upon a twofold proposition. First, we were
told that Beverly “entered into an oral joint venture with [Glen] Soderstrom” and Sofamco.


 
Second, Beverly averred that it was entitled to relief “. . . as a result of the breach of the
fiduciary relationship between Abbey and [Glen] Soderstrom.” (Emphasis added). And,
to establish the accuracy of these propositions, we were referred to the affidavit of Joe
Abbey. But, our reading of that affidavit did not lead us to the same conclusions reached
by Beverly. 
          It is quite true that Abbey alluded to an oral agreement involving the formation of “a
joint venture.” Yet, according to him, the parties who “entered into” the agreement were
“The Beverly Foundation and Glen Soderstrom,” not Beverly and Sofamco. So, unless
Sofamco and Soderstrom are one and the same entity, which no one suggested or proved,
Soderstrom’s own agreement to join Beverly in a venture is not evidence that Sofamco
joined it as well. 
          That Abbey described Sofamco as Soderstrom’s “nominee” also failed to constitute
evidence that the corporation was a party to the venture. This is so because in calling the
company Soderstrom’s “nominee,” Abbey neglected to provide factual data explaining what
that term meant. Being one’s “nominee” could mean many things including that Sofamco 
was intended to be a mere recipient of some grant or conveyance. Thompson v. Meyers,
505 P.2d 680, 684 (Kan. 1973) (stating that the word nominee has more than one meaning
including that of a person who is named or designated as a recipient of a grant or
conveyance). Or, it could be that Sofamco was selected to act for Soderstrom in some
limited way. Black’s Law Dictionary 1149 (9th ed. 2009) (defining nominee as one
designated to represent another in a limited sense). So too could it mean that the parties
intended for Sofamco to be the recipient of property but otherwise insulated from the acts
of Soderstrom. See e.g. Petrocana, Inc. v. William H. Kenny Consultants, Ltd., 595 So.2d
384, 385 (La. Ct. App. 1992) (wherein Flynn designated Kenny Consultants as his nominee
to receive mineral leases acquired in furtherance of a mutual project with Petrocana and
holding that as a nominee Kenny Consultants was not responsible for Flynn’s refusal to
abide by his agreement to transfer Petrocana an overriding royalty interest in the leases). 
More importantly, none of those situations alone (even if they applied here) would allow us
to reasonably deduce that because Sofamco may have been Soderstrom’s nominee it ipso
facto agreed to join the joint venture or assume any contractual and fiduciary obligation
Soderstrom may have owed Beverly. So, without evidence developing the role of a
“nominee” or otherwise illustrating that Soderstrom had the authority to bind Sofamco,
considering Sofamco as Soderstrom’s “nominee” is a conclusion that invites utter
speculation. And, as a conclusion, it means nothing for purposes of summary judgment.


 
See Dickerson v. Davis, 925 S.W.2d 123, 126 (Tex. App.–Amarillo 1996, writ dism’d w.o.j.)
(holding that a conclusion is a statement that omits the underlying facts necessary to
support it and, therefore, is not competent summary judgment evidence). 
          Simply put, the record before us falls short of creating a material issue of fact on the
question of whether Sofamco entered a joint venture with Beverly, agreed to assume the
duties and obligations of Soderstrom in the supposed Beverly/Soderstrom venture, or had
any other kind of fiduciary relationship with Beverly. And, unless there was an agreement,
there could be no breach of it or fiduciary duties emanating from it. Thus, the trial court
legitimately held, as a matter of law, that Sofamco was entitled to summary judgment on
the claim of breached contract and constructive trust. 
          Statute of Frauds
          As for the allegation that the Statute of Frauds did not support summary judgment,
much depends upon the allegations in Beverly’s original petition. Sadly, it is not an
example of clarity. Yet, we must read it liberally, Moneyhon v. Moneyhon, 278 S.W.3d
874, 878 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (requiring that pleadings be read
liberally) and, in so construing it, we deduce that Beverly wanted a one-eighth working
interest in the mineral leases at issue. We further deduce that Beverly believed itself
entitled to the interest because Sofamco and/or Soderstrom promised to convey it under
the oral joint venture agreement. Yet, contracts for the sale of real estate are required to
be written and signed by the party to be charged. Tex. Bus. & Com. Code Ann.
§26.01(b)(4) (Vernon 2009). And, an agreement to convey a working interest in a mineral
lease is such a contract. Exxon Corp. v. Breezevale, Ltd., 82 S.W.3d 429, 437 (Tex. App.
–Dallas 2002, pet. denied); see also Long Trusts v. Griffin, 222 S.W.3d 412, 416 (Tex.
2006) (stating that a contract for the transfer or assignment of an interest in an oil and gas
lease is a real property interest subject to the statute of frauds). So, any alleged oral
agreement by Sofamco to convey the working interest Beverly demanded would be
unenforceable. Nevertheless, Beverly endeavored on appeal to escape this result by
posing two arguments. 
          Through the first, we are told that the supposed oral agreement between the parties
could be performed within one year. See Tex. Bus. & Com. Code Ann. §26.01(b)(6)
(Vernon 2009) (requiring agreements which cannot be performed within one year to be in
writing). While this could be true, the allegation does not address the requirement for a
writing when agreeing to convey interests in real property. So, this contention is
unpersuasive. 
          The second argument mentioned by Beverly consists of the proposition that
Sofamco attempted to improperly shift the burden of proof. In other words, Sofamco
allegedly had the burden to establish, as a matter of law, that the statute applied since the
Statute of Frauds was an affirmative defense. See La Cour v. Lankford Co., Inc., 287
S.W.3d 105, 110 (Tex. App.–Corpus Christi 2009, pet. denied) (holding that a defendant
who seeks to prove an affirmative defense via a motion for summary judgment has the
burden to prove the elements of the defense). Instead of carrying that burden by tendering
evidence proving the elements of the Statute of Frauds, Sofamco merely asserted that
Beverly had no evidence of a written agreement or promise. According to Beverly, this
implicitly imposed on it the burden to disprove the defense. Assuming this to be true, we
nonetheless liken the situation to that old adage about skinning a cat. Once the cat is
skinned, it does not matter how it was done for the result is the same. That too can be said
here.
          By the time Sofamco moved for summary judgment, Beverly had already filed its
own motion along with Abbey’s affidavit. As previously alluded to, Abbey established not
only that the agreement in question was oral but also that it involved the conveyance of a
working interest in a mineral lease. Consequently, the evidence required to trigger
application of the Statute of Frauds was before the court. See Knighton v. International
Business Machines Corp., 856 S.W.2d 206, 208 (Tex. App.–Houston [1st Dist.] 1993, writ
denied) (holding that where the parties file cross motions for summary judgment, the trial
court must look at the evidence tendered by both movants when deciding how to rule).
That left Sofamco in the position of merely bringing the matter to the trial court’s attention.
So, it may well be that Sofamco utilized odd procedural steps to present its allegation to
the trial court. The defense, nonetheless, was in play despite the words used in its motion
for summary judgment. Furthermore, the trial court had Abbey’s affidavit from which to
conclude, as a matter of law, that the Statute of Frauds barred recovery.
          Scope of Summary Judgment 
          We now come to the final issue proffered to secure the reversal of the summary
judgment awarded Sofamco. Through it, we are told that Sofamco’s motion failed to
encompass the claims of fraud, conspiracy and breach of the fiduciary relationship. We
overrule it as well.
          Beverly is quite correct in stating that a summary judgment cannot be granted on
causes of action omitted from the motion. Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 204 (Tex. 2002). But, that is not the situation here. In praying for summary judgment,
Sofamco asked the trial court to “set this No Evidence Summary Judgment for hearing and
at that time enter an order granting Defendant’s motion and dismissing all claims and
causes of action against Sofamco, Inc.” (Emphasis added). The parameters set by the
phrase “all claims and causes of action” must necessarily include the allegations of fraud,
conspiracy and constructive trust. If this was not so, then “all” would not mean “all.” 
          This is not to say that the motion was free of defect. Admittedly, Sofamco did not
specify the grounds or reasons why it believed itself entitled to summary judgment on the
claims of fraud, conspiracy and constructive trust. See Tex. R. Civ. P. 166a(c) (obligating
the movant to specify the particular grounds supporting summary judgment). Yet, the
record does not show that Beverly objected or specially excepted to the motion’s form or
lack of specificity. So, that complaint was waived. See Simmons v.Ware, 920 S.W.2d 438,
450 (Tex. App.–Amarillo 1996, no writ) (stating that the failure to specify the grounds for
summary judgment does not require reversal unless the party complaining of the defect
files an exception pointing out that the lack of specificity left him without adequate
information). Nor do we have before us the argument that since Sofamco omitted to
specify grounds or proffer evidence addressing those causes of action it failed to prove,
as a matter of law, its entitlement to summary judgment. Beverly simply complained that
the motion failed to include those causes of action, and that is inaccurate. 
          Having overruled each issue, we affirm the trial court’s summary judgment.
 
                                                                           Brian Quinn
                                                                          Chief Justice