**Cesar Antonio RIASCOS, Appellant (aka Favio Largacha),**

v.

**The STATE of Texas, Appellee.**

**No. A14–88–001060–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 31, 1990.

Randy Schaffer, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

A jury convicted appellant of murder and assessed punishment, enhanced by a prior conviction, at confinement for life in the Texas Department of Corrections and a fine of $10,000. The jury made an affirmative finding by special issue at the guilt/innocence stage of trial that appellant used or exhibited a deadly weapon in the commission of the offense.

Appellant brings three points of error, claiming denial of a fair trial because of improper comments by the prosecution; ineffective assistance of counsel; and improper jury instruction on the law of parties in connection with the special issue inquiring whether appellant used or exhibited a deadly weapon. We reverse and remand.

Complainant entered the home of his grandmother just before noon one day with three other male persons. One of these companions demanded the complainant pay $200 owed to him. Complainant then went alone to the back of the house and returned in about five minutes carrying a burned match and a glass but no money. There was a struggle during which two of the three companions held complainant by the arms while the third pulled a gun from under his own sweater and began shooting. While complainant was in a crouched position, a second of the three persons produced a gun. Complainant received a bullet wound in the forearm, two in the abdomen, and one in the head from which he died later that day. Complainant's grandmother was an eyewitness to the shooting, having been in the same living room area. Her part-time maid was also an eyewitness, having had a clear view of the shooting from the adjoining kitchen of the small home. Houston Police assigned the case to an officer in the Homicide Division "Chicano Squad" responsible for Colombian drug-related homicides. The police officer testified at trial that confidential informants gave him leads on the identity and residence of two of the three persons involved in the shooting, after which he prepared two different photo arrays for use in asking the eyewitnesses and others to try to identify the killers. Both the grandmother and the part-time maid made unequivocal and positive identification of appellant (and his co-defendant) from the photographs, and testified at the pre-trial hearing on motion to suppress that appellant was the person they had identified as one of the gunmen. Only the maid testified before the jury at the trial, however. She again identified appellant in the courtroom.

The investigating officer showed the photo arrays to the leasing agent of the apartment complex at which two of the suspects were believed to be living. She identified the appellant and his co-defendant as tenants, brothers Favio and Jorge Largacha. (Favio Largacha later turned out to be the appellant and Jorge Largacha had a Texas driver's license under the name of Ricardo Colon.).

The investigating officer also asked a neighbor of the grandmother to identify suspects from the photographs. The neighbor was first asked to make the photo identification in October 1988, whereas the offense occurred earlier that year in March. The neighbor was not a witness to the shooting nor did he identify appellant

or appellant's co-defendant as having been at the scene on the day of the offense. However, several days prior to the shooting the neighbor had been approached by appellant and his co-defendant in their car, and driver-appellant had asked the neighbor if there had been a person in the neighborhood wearing a "green coat" and that appellant stated he "had something" for the man in the green coat, patting his own abdomen or "waist". Later the neighbor observed the complainant wearing a green coat and, putting "two-and-two together," he advised complainant that some people were seeking him out. The neighbor reported that complainant acknowledged receipt of the information by saying "he wasn't worried about those guys." The neighbor testified that he had seen appellant and his co-defendant in the neighborhood on other occasions before and that he was familiar with their appearance. The neighbor made positive identification of appellant and his co-defendant from the photographs as well as in the courtroom one month later.

The jury heard appellant's girlfriend testify that she and appellant had driven to Alabama together and had been out of the state continually for several weeks prior to the offense and for about one week afterward. The neighbor's earlier testimony was proof to the contrary, which, when added to clear impeachment of the girlfriend on cross-examination and other eyewitness identification of appellant as being at the scene of the shooting, gave strong probative evidence that the claimed alibi was not believable.

In his first point of error appellant challenges the repeated reference by the prosecutor in his opening statement and closing argument that appellant was a Colombian illegal alien. Inasmuch as error was not preserved by proper objection at trial and because the identical issues are presented in point of error number two, we overrule point of error number one.

█ In a second point of error, argued along with point number one, appellant asserts the conduct of his trial counsel denied him a fair trial. Appellant was entitled to reasonably effective assistance of counsel by right established under the sixth amendment of the United States Constitution, applied to the states through the fourteenth amendment, and also under article I, section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure. *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App.1980). The adequacy of the assistance is tested by the *totality* of the representation, rather than by isolated acts or omissions of trial counsel, *Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex.Crim.App.1983), and is tested at the time of trial, not through hindsight. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim. App.1983).

█ Texas follows the federal standard, enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in deciding whether a defendant has received effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779. Under that standard, the defendant must establish two things: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. If either of the elements is not established, the contention fails. *Rico v. State*, 707 S.W.2d 549, 556 (Tex.Crim.App. 1983). Moreover, a presumption exists in favor of counsel's conduct and a defendant has the burden of disproving "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065. Appellant specifically urges:

1. Trial counsel failed to object to the prosecutor's referring to appellant as a Colombian illegal alien in the opening statement:

   "You'll hear from Officer Escalante a man who works for the Houston homicide department, a man that specializes in murder by Colombian illegal aliens."

2. Trial counsel failed to object to the development by the prosecution of a scenario of a drug related murder in

the absence of competent evidence. That development included:

a. the deceased complainant's brother, a police officer, testified that he knew complainant was a drug user and that he had heard rumors that complainant also was selling drugs. This testimony was preceded by the prosecutor's opening remarks:

"I expect to hear testimony from his brother that he was not what you call a stable citizen. I expect to hear testimony that he was suspected of dealing drugs on the street corner on 33rd Street."

b. the arresting officer, Escalante, testified that his duties included the investigation of Colombian drug related murders, saying:

"I get assigned the majority of Colombian drug related homicides."

c. weapons never linked to the murder were identified as being recovered from a female drug operator. Though objected to, no instruction was sought on the following:

"She was a female drug load operator out of the Houston area wanted out of Tampa for ..."

d. the prosecutor's argument that the murder was perpetrated by drug money collection enforcers who were setting an example to establish fear in the community:

**At the guilt/innocence phase of trial—**

"Somebody gunned [complainant] down in front of his 78 year old grandmother and another person and they apparently didn't care whether they were witnesses. Maybe they wanted witnesses to be there. Maybe it was important if you're in a certain kind of business that the neighborhood gets the message. Did they get the message that you don't mess up, that you don't mess with them."

\* \* \* \* \* \*

"Who in that community would want to testify against the kind of people who would commit this kind of crime for the reasons it was committed?"

\* \* \* \* \* \*

"... killed him over two hundred dollars and left two witnesses to tell everyone else in that area of town about what they had done and about they mean business."

**At the punishment phase of trial—**
"I suggest the evidence shows you that when he didn't produce that money, they sent their own message. They sent their message to everyone on 32nd Street who hangs around on the corner of 33rd that they shouldn't be messed with ..."

\* \* \* \* \* \*

"Did they take him out of the house? No. They left witnesses, ladies and gentlemen. They left witnesses. Because they had their own message to send. Don't mess with us. Don't mess with us. Look. Look what happens."

3. Trial counsel opened the door to extraneous offenses committed by appellant. Testimony of appellant's girlfriend brought as alibi developed the following moderate disaster:

DEFENSE: Ms. Sparrow did you know Mr. Riascos to carry a gun?

WITNESS: Well, off and on

\* \* \* \* \* \*

DEFENSE: Prior to going to Alabama, Ms. Sparrow, were you working?

WITNESS: No, I hadn't started working this year. I was selling drugs. That's why I got my case.

DEFENSE: You were selling drugs?

WITNESS: Uh-huh.

DEFENSE: Is that where the money you had came from?

WITNESS: Yes.

DEFENSE: Did Mr. Riascos have money with him?

WITNESS: Yes.

DEFENSE: Do you know of your own personal knowledge if that's where his money came from?

WITNESS: No, I don't know of my own personal knowledge, no.

DEFENSE: You've never seen him sell any drugs?

WITNESS: No, I haven't seen him.

\*    \*    \*    \*    \*    \*

STATE: Are you telling us he never sold drugs?

WITNESS: No, I'm not telling you that. I don't know.

\*    \*    \*    \*    \*    \*

STATE: Now, you were convicted on August the 25th of 1988 for possession of cocaine; is that right?

WITNESS: Yes, that's when I had my motion to revoke.

\*    \*    \*    \*    \*    \*

STATE: [Confronting witness with a written report from her drug counsellor.] "Ms. Sparrow reports a recent romantic relationship with a man named Cesar." That's correct? That's [Appellant] Cesar?

WITNESS: But there is another Cesar.

STATE: All right, that's what you say. You're saying that is not the Cesar here?

WITNESS: No. It's not.

STATE: You go on to say, "Ms. Sparrow admits he is an illegal Colombian who supports himself through illegal drugs dealings"?

■ Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Holland v. State,* 761 S.W.2d 307, 320 (Tex.Crim.App.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989), citing *Butler v. State,* 716 S.W.2d 48 (Tex.Crim.App.1986).

■ After reviewing the entire record, we find appellant has met his burden. We cannot say beyond a reasonable doubt that the irregularities of the trial made no con-

tribution to the conviction of appellant or to his punishment. Tex.R.App.P. 81(b)(2).

Texas courts have long held that the national origin or race of the defendant is an inappropriate focal point for argument by the prosecution, particularly in light of the times. *See Marx v. State,* 141 Tex. Crim. 628, 150 S.W.2d 1014 (1941), ("Gentlemen of the Jury, we have this man of Germany—this man or beast ..."); *Richardson v. State,* 158 Tex.Crim. 536, 257 S.W.2d 308 (1953), ("This negro is a lustful animal ... he lacks the very fundamental elements of mankind."). *See also Commonwealth v. Gallego,* 27 Mass.App.Ct. 714, 542 N.E.2d 323 (1989), (The prosecutor worked herself up to unproved assertions which led to a mistrial. "We're talking, ladies and gentlemen, Colombian drug dealers.")

We also are mindful of holdings in numerous federal cases which adhere to the proposition that race and nationality should play no adverse role in the administration of justice, including those of two recent cases where an improper focusing of attention on the Colombian origin of the defendants resulted in the setting aside of convictions or sentences. *U.S. v. Borrero-Isaza,* 887 F.2d 1349 (9th Cir.1989); *U.S. v. Edwardo-Franco,* 885 F.2d 1002 (2nd Cir. 1989).

There was no need for the case before us to have been focused on drug traffic, illegal Colombians, and extraneous offenses. The probative evidence showed a killing related to a $200 debt of an unknown character, nothing more. The State unduly inflamed the jury to the prejudice of appellant. No reasonable argument can be brought to suggest the defense allowed the events to take place in the interests of trial strategy. Competent counsel would have immediately objected, obtained jury instruction and moved for a mistrial on each occasion. The cumulative effect of the errors pointed out by appellant is outrageous and we must remand for a new trial as to both guilt or innocence and punishment. Appellant's second point of error is sustained.

In the third and final point of error appellant argues that the affirmative finding of a deadly weapon must be deleted because the court did not instruct the jury that the law of parties did not apply to the determination of whether appellant used or exhibited a deadly weapon. Because we have sustained point of error number two, it is unnecessary for us to pass on the third point of error.

The judgment of conviction is reversed and remanded for a new trial.