Heriberto RAMIREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–00–0472–CR.

Court of Appeals of Texas, Amarillo.

July 6, 2001.

---

Jaime O. Lopez, Lubbock, for appellant.

Terry McEachern, Plainview, for appellee.

Before QUINN, REAVIS and JOHNSON, JJ.

QUINN, Justice.

Heriberto Ramirez (appellant) appeals his conviction for aggravated sexual assault. Through two issues, appellant claims he received ineffective assistance of counsel and the trial court erred by failing to instruct the jury as to the law applicable to the case. Moreover, these errors resulted in him being improperly convicted of the charged offense. We address only the claim of ineffective assistance and reverse the judgment.

### Background

Because appellant is not raising legal and factual sufficiency issues, a brief recitation of the underlying facts will suffice. One day after school, the twelve-year-old victim, C.G., told Virginia Chavez (Chavez), a family member, that appellant had sexually assaulted her. Appellant and C.G.'s mother were romantically involved and living together when the assaults allegedly occurred.

Subsequently, C.G. was taken to the hospital where a nurse, Dana Wong (Wong), conducted a physical examination of the girl and found evidence supporting the allegation. Thereafter, Officer Mitch-ell Matthews (Matthews) of the Plainview Police Department arrested appellant, who appeared intoxicated at the time. During questioning by the officer, appellant denied the allegations levied by C.G. Despite his denial, the State indicted appellant.

At trial, a myriad of witnesses were called by the prosecutor. However, only three presented evidence establishing the assault. Those witnesses were C.G., her cousin who appeared as an outcry witness, and Nurse Wong. Aside from providing general information, the other witnesses propounded nothing directly showing that appellant had molested the girl. However, through their testimony, the prosecutor obtained evidence that appellant was not only an illegal alien but also someone who drank alcoholic beverages quite a bit. Though the relevance of this particular evidence could be questioned, trial counsel did not object to its solicitation or admission.[1] Rather, when he placed appellant on the witness stand, trial counsel had appellant admit that he was an illegal alien. So too did he remain silent when the prosecutor, during cross-examination, interrogated appellant about the extent of his drinking.[2]

Eventually, each side completed the presentation of their respective case and opted to summarize their position to the jury. During his summation, counsel for appellant endeavored to address the evidence of appellant's alcohol use. While doing so, he explained that he did not want the jurors to "perceive" his client "as a drunk Mexican." Thereafter, during his rebuttal, the prosecutor began by arguing that:

> [appellant] talked about alcohol being a problem. We know from defendant's

---

1. No one had alleged that appellant's propensity to imbibe was in any way linked to the commission of the crime.

2. During this exchange, the prosecutor remained unable to tie appellant's use of alcohol to the accusation for which appellant was being tried.

own words ... that alcohol was a problem ... [trial counsel] used this phrase—and I take offense to this phrase. *He said his client was a drunk Mexican.* It doesn't have to be Mexican. Doesn't matter what race it is whatsoever.... (Emphasis added).

Upon hearing each side's summation, the jury retired to deliberate appellant's guilt. It subsequently found him guilty of the charge and eventually assessed him a prison term of 63 years.

### Issue One–Ineffective Assistance of Counsel

Though numerous omissions by trial counsel were cited as evidence of ineffective assistance, the ones we consider concern appellant's status as an illegal alien from Mexico, his drinking, his mention of the phrase "drunk Mexican," and his silence when the State alluded to appellant as a "drunk Mexican." And, upon considering them, we conclude that appellant was denied the effective assistance of counsel.

#### 1. Standard of Review

The standard of review applicable to claims of ineffective assistance is well-known and will not be repeated here. We find it sufficient to merely refer the litigants to *Thompson v. State*, 9 S.W.3d 808 (Tex.Crim.App.1999) and *Beck v. State*, 976 S.W.2d 265 (Tex.App.Amarillo 1998, pet. ref'd) for an explanation of same.

Next, it has long been our standard of justice to try those accused of a crime for their acts, not their race or ethnicity. Neither race nor ethnicity have any place in the mind of a juror who sits in judgment of a criminal defendant. For this reason, our courts have long prohibited these subjects from becoming a focal point in a criminal prosecution. *Riascos v. State*, 792 S.W.2d 754, 758 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Moreover, defense counsel who have facilitated or permitted race or ethnicity to become issues have been held to be less than reasonably effective counsel. *Id.* Indeed, one cannot reasonably argue that permitting such topics to be interjected furthers legitimate trial strategy. *Id.* Rather, it is incumbent upon counsel to object, request an instruction directing the jury to disregard the matter, and move for a mistrial. *Id.*

#### 2. Application of Standard

Of particular import are various circumstances depicted by the record. The first concerns appellant's status as an illegal Mexican alien. Simply put, that appellant was an illegal immigrant from Mexico was mentioned by both the prosecutor and defense counsel during trial. Next, through one of its witnesses, the State made issue of appellant's use of alcoholic beverages. That appellant had a propensity to drink large quantities of beer was then developed by both the State and defense counsel. While it may be that the first topic had possible relevance to his access to and relationship with C.G. (given that appellant had returned to live with C.G.'s mother and C.G. each time he was deported), the relevance of appellant's drinking habits is highly suspect. Again, no one alleged that alcohol was in any way involved in appellant's commission of the crime. Yet, trial counsel made no effort to suppress mention of either topic. And, that his silence *vis-a-vis* the evidence of intoxication was part of some trial strategy appears questionable since defense counsel, during summation, indicated he did not want his client discussing various aspects of his use of alcohol.

Moreover, the State repeatedly used a slang ethnic term to denote the area wherein appellant and the victim lived. Though the area was actually known as the Date Street Housing Project, the State called it "campito." That the term "campi-

to" itself carries overt ethnic overtone is obvious for several reasons. First, those knowledgeable of the Spanish language would recognize it as slang for "little camp." Second, being a slang Spanish term, it suggests that the inhabitants of the "campito" were and are most likely of Hispanic or Mexican–American background. This interpretation is supported by the fact that the "campito" at bar was known as the home for migrant workers of such ethnicity.

Additionally, defense counsel, during his summation, invoked the phrase "drunk Mexican" while discussing his client. No one up to that time had overtly uttered the ethnic slur. Nor had anyone up to that point invoked terminology which had the direct effect of resurrecting potential ethnic stereotypes which accompany the use of the slur.

Further, the prosecution openly reiterated the slur in a most damning way. First, it misled the jury when it accused defense counsel of calling appellant a "drunk Mexican." Simply put, appellant's trial attorney had asked the jury to avoid picturing his client in terms of the ethnic image. Yet, the State accused counsel of characterizing his client as a "drunk Mexican," something that the defense counsel never actually did.[3] Second, in making the accusation, the State furthered what defense counsel sought to avoid. That is, the State's words went far in attempting to crystalize the image of appellant as a "drunk Mexican" in the collective eyes of the jury.[4]

So, what we have before us is a record depicting that ethnicity initially seeped then barged into the trial of appellant. Furthermore, trial counsel assisted in creating this circumstance by 1) remaining silent when the State first interjected the issue, 2) invoking the term "drunk Mexican," and 3) doing nothing when the moniker of "drunk Mexican" was placed squarely on the shoulders of appellant by the State. We can conceive of no reasonable trial strategy *vis-a-vis* defense counsel permitting ethnicity and ethnic slur to become a focal point at his client's criminal trial.[5]

---

3. Indeed, the dissent acknowledges that the State "misstated" defense counsel's argument.

4. The dissent acknowledged that the prosecution "misstated" defense counsel's argument. Yet, it thought the "misstatement" inconsequential because the prosecutor informed the jury that he found the term offensive and that ethnicity supposedly was irrelevant. Interestingly, if ethnicity were a non-issue in the eyes of the State, then one is left to wonder why the prosecutor deigned to address his opponent's comment, "misstate" the context in which the slur was made, and, *immediately prior to the time the jury was to recess to determine appellant's guilt,* repeat the slur in a way which clearly suggested that appellant was a "drunk Mexican." Moreover, that the State purportedly found the language offensive but nonetheless invoked it in reference to appellant at a critical time of the trial tends to make use of the term by the State more egre-

gious. Under that circumstance, it cannot be said that utterance of the slur was a mere slip of the tongue by one unaware of its meaning and inherent slander. In sum, we hesitate to suggest, in any way, that the State may demean an accused through use of offensive ethnic or racial epithets so long as it tells the jury at some time or another that it finds the slurs offensive and that ethnicity should have nothing to do with their decision.

5. Indeed, the dissent does not even attempt to justify counsel's actions as some sort of potential trial strategy. Rather, it argues that the prosecutor did not focus on appellant's ethnicity because he told the jury that ethnicity should not be a factor in its determination. While the State did suggest as much, it was, nonetheless, the State who first broached appellant's status as an illegal Mexican immigrant during a prosecution for an offense which had little, if anything, to do with appellant's nationality. It was the State that used

Simply put, in defense counsel's 1) remaining silent while the jury heard evidence of his client's drinking habit, 2) utilizing the phrase "drunk Mexican," and 3) remaining silent while the State obviously misstated the context in which the phrase was used and labeled appellant as a "drunk Mexican," defense counsel's actions fell below an objective standard of reasonableness. Furthermore, given 1) the nature of the slur, 2) its invocation by both the defense and the State, 3) the repeated allusion to appellant's immigration status and drinking by both counsel, 4) the repeated use of the slang term "campito" by the State, 5) the fact that the evidence of appellant's guilt was less than uncontradicted, and 6) the 63 year prison sentence levied upon appellant even though he had not been previously convicted of any crime other than being in the United States illegally, we conclude that there exists a probability, sufficient to undermine our confidence in the outcome, that the deficiency prejudiced appellant.

Accordingly, we sustain appellant's first point of error, reverse the judgment, and remand the cause for further proceedings.

REAVIS, J., concurs.

JOHNSON, J., dissents.

REAVIS, Justice, concurring.

I concur with the decision that the judgment be reversed, but focus my decision on the provisions of article 1, section 3a of the Texas Constitution entitled "Equality under the law," which provides:

Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative.

During the guilt-innocence phase of the trial, the prosecutor elicited testimony from the arresting officer and another witness which, although irrelevant to the charged offense, informed the jury that appellant was an illegal alien and had returned to Texas from Mexico after a prior deportation. However, defense counsel did not object to the evidence regarding appellant's status as an illegal alien, request that the jury be instructed to disregard such evidence, or move for mistrial.

In order to sustain a contention that trial counsel's failure to object to evidence constitutes ineffective assistance of counsel, an appellant must show that the trial court would have committed error in overruling such an objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Cr.App. 1996). Based upon the record in this case, because the constitutional provision is effective without enabling legislation and section 3a would have required the trial court to sustain an objection to the evidence that appellant was an illegal alien had trial counsel made such objection, I also conclude that appellant's first issue should be sustained.

JOHNSON, Justice, dissenting.

As the majority opinion sets out, criminal defendants are to be tried for the crime with which they are charged, and

the word "campito" (and thereby interjected into the trial the ethnic connotations accompanying that term) when the area wherein appellant lived had an actual, non-ethnic oriented name. It was the State that (despite supposedly objecting to the term) falsely accused defense counsel of calling his client a "drunk Mexican." It was the State that, in misleading the jury as to what defense coun-

sel said, clearly hung the moniker of "drunk Mexican" upon appellant. Had ethnicity not been a focal point, one can only wonder why the State permeated the trial with the topic. Finally, and contrary to the suggestion of the dissent, *Riascos* does not mandate that race or nationality become *the* focal point at trial, only that it become *a* focal point. And, sadly at bar, it became a focal point.

not for their status or ethnicity. In *Rias-cos v. State*, 792 S.W.2d 754 (Tex.App.— Houston[14th Dist.] 1990, pet. ref'd), cited by the majority the court noted that "Texas courts have long held that the national origin or race of a defendant should not be the *focal* point of argument by the prosecution..." (emphasis added). The *Riascos* court determined that the record before it did not show any need for the case against the defendant to have been *focused* on drug traffic, illegal Columbians and extraneous offenses when the only evidence was that a killing took place over a $200 dept. The court concluded that the State had unduly inflamed the jury to the prejudice of the defendant and to the extent that the cumulative effect of the errors complained of by the appellant was "outrageous." *Id.* at 758.

I do not view this record to demonstrate that appellant's illegal alien status or his ethnicity were the focal points of the State's presentation, or that the State used either of the subjects to inflame the jury against appellant. Neither of the subjects was mentioned by the State during *voir dire* of the jury venire, nor during opening statement. Neither subject was argued by the State during summation on guilt or innocence, until after defense counsel made a plea for the jury "if you will forgive the phrase, as a drunk Mexican." And, although the prosecutor misstated defense counsel's argument and argued that defense counsel called appellant a drunken Mexican, the misstatement was in the context of the State's argument that

"... and I take offense to this phrase. [Counsel] said his client was a drunken Mexican. Doesn't have to be Mexican. Doesn't matter what race it is whatsoever. What is right is right and what is wrong is wrong."

The State presented its case, from *voir dire* and opening statement to final summation, as a question of witness credibility. Both prosecution and defense attorneys questioned the jury panel about whether testimony of one witness would be sufficient for conviction, if believed. According to the complainant, the sexual assault by appellant took place with no one present but the complainant and appellant. Appellant denied the charges. Uncontroverted physical evidence showed that complainant's hymen had been torn and that penetration of her sexual organ had occurred at some point. The State asserted that the complainant should be believed; defense counsel urged that appellant should be believed. The jury had to resolve a direct conflict in testimony between the twelve-year-old complainant and the thirty-seven-year-old appellant.[1] The State did not focus on or emphasize appellant's status as being illegally in the country or either complainant's[2] or appellant's race during the guilt-innocence stage of trial. During the punishment stage, the prosecutor referenced appellant's illegal status in the context that appellant had previously knowingly violated law by entering and remaining in the country illegally.

1. State's counsel summed up the respective positions of the State and appellant as he completed the State's rebuttal argument: "I told you it would probably be better for me to just stand up here and say 'He did it' and [defense counsel] to say 'Did not,' and for me to say 'Did too,' and for you-all to go back there and deliberate."

2. At the beginning of final summation the prosecutor affirmed that complainant's ethnicity should not be a factor in deliberations: " ....Because you take a twelve year-old and you do what was done to that twelve year-old - or any twelve year-old for that matter - be they black, be they white, be they Hispanic, be they Asian, be they any color. You don't do that to a twelve year-old."

I disagree that appellant, by this record on direct appeal, has met his burden of proving ineffective assistance of counsel. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Even assuming, however, that appellant has met his burden to prove ineffectiveness of counsel, I do not find the record to present a reasonable probability that but for counsel's alleged errors the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim. App. 1986).

Accordingly, I respectfully dissent.