IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00223-CR

No.
10-03-00224-CR

 

Raul Jacobo Castaneda,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 292nd District Court

Dallas County, Texas

Trial Court Nos. F02-21065-V and F02-21066-V

 



MEMORANDUM  Opinion



 

Raul Castaneda pled not guilty to
the charged offenses of delivery of methamphetamine and possession with intent
to deliver methamphetamine.  A jury
convicted him of both offenses and responded affirmatively to the deadly weapon
special issue.  The trial court set
punishment at 35 years’ imprisonment for each offense.  Castaneda’s sole issue is that he received
ineffective assistance of counsel, who failed to: (1) file timely motions; (2)
object to the deadly weapon special issue in the guilt-phase of trial; (3) move
to suppress evidence of the guns seized; and (4) object to testimony that he
claimed invited the jury to convict him based on his ethnicity.  We will overrule Castaneda’s single issue and
affirm the judgment.

BACKGROUND

Houston police arrested Pedro Madrigal for possession
of about three pounds of methamphetamine. 
Madrigal cooperated with police and provided the name of his supplier, Javier
Molina, in Dallas.  It is
undisputed that Javier Molina is Raul Castaneda.  Madrigal arranged for his wife and an
undercover officer to meet with Castaneda to purchase one pound of
methamphetamine.  The material they
purchased field-tested positive for methamphetamine and weighed about one
pound.  A second purchase of 8-10 pounds
was arranged with the intent to arrest Castaneda.  Madrigal’s wife went to Castaneda’s apartment
alone, confirmed methamphetamine was there, and accompanied Castaneda to
another location to receive money from the undercover officer.  Police pulled Castaneda over before he reached
his destination; he was driving a white Ford Mustang that was registered to
someone else.  Castaneda refused to
consent to a search of the apartment but was arrested and transported back to
the apartment.  Police then obtained a
search warrant for the apartment. 
Castaneda did give verbal consent for a search of a white pickup truck
parked near the apartment, but he said he did not own it.[1]  The truck’s registration listed one of the
owners as Javier Molina.  The police
searched the apartment and truck and found two loaded handguns, pictures of
Castaneda with the same handguns, documents reflecting money transfers to Mexico, $6,000 in cash, components used in the
packaging and distribution of methamphetamine, a digital scale, a press, and
more than 31 pounds of methamphetamine.

INEFFECTIVE
ASSISTANCE OF COUNSEL

Castaneda’s sole issue questions the
effectiveness of his trial counsel.

Standard
of Review

We must adhere to the United States
Supreme Court’s two-pronged Strickland
test to determine whether counsel’s representation was so inadequate as to
violate a defendant’s Sixth Amendment right to counsel.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
(1984); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999).  Strickland requires a defendant to show
that: (1) counsel’s representations fell below an objective standard of
reasonableness and (2) counsel’s deficient performance prejudiced the
defendant.  Roe v. Flores-Ortega, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 1034, 135 L.Ed.2d
985 (2000); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.  Failure to make the required showing of
either deficient performance or sufficient prejudice defeats the
ineffectiveness claim.  Strickland, 466 U.S. at 700, 104 S.Ct. at 2071.

When reviewing a claim of
ineffective assistance of counsel, there is a strong presumption that defense
counsel’s conduct was reasonable and constituted sound trial strategy.  Id. at 689, at 2065.  The appellant has the burden to overcome this
presumption.  Id.  To prove prejudice, the
appellant must show that there is a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, at 2068.  A reasonable probability is a probability sufficient
to undermine confidence in the outcome.  Id.

The appellant bears the burden of
proving by a preponderance of the evidence that counsel was ineffective.  Thompson,
9 S.W.3d at 813.  Absent record evidence,
we must not speculate as to trial counsel’s strategy.  Jackson v.
State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  If the record is
silent as to counsel’s trial strategy, we will “not conclude the challenged
conduct constituted deficient performance unless the conduct was so outrageous
that no competent attorney would have engaged in it.”  Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999)).

Failure of counsel to make a
frivolous objection is not ineffective assistance.  Moore v.
State, 4 S.W.3d 269, 275 (Tex.
App.—Houston [14th Dist.] 1999, no pet.). 
Also, failure of counsel to object to admissible evidence is not
ineffective assistance.  Cooper v. State, 707 S.W.2d 686, 689
(Tex. App.—Houston [1st Dist.] 1986, pet. ref’d).  To prevail on a claim of ineffective
assistance of counsel for failure to file a motion to suppress evidence from a
search, the record on direct appeal must affirmatively prove appellant’s motion
to suppress would have been granted.  Jackson v.
State, 972 S.W.2d 954, 957
(Tex. Crim. App. 1998).

Untimely
Motions


 Request for contraband for testing


Trial counsel requested production
of the contraband for testing.  During
the pre-trial hearing, the trial court noted that the request was untimely, so
trial counsel withdrew the request. 
Castaneda argues ineffective assistance solely because the request was
late.  The State argues that even though
the request was late, there was no prejudice to Castaneda because he does not
contest the sufficiency of the evidence that he possessed the amounts of
methamphetamine as charged in the indictments.

Castaneda was charged with
possession and intent to deliver over 400 grams of methamphetamine.  The lab results revealed 14,405.37 grams that
tested positive for methamphetamine, including adulterants and diluents.  Because Castaneda does not challenge the
sufficiency of this evidence, it does not appear that additional testing would
have affected the proof of the elements of the offenses.  We need not determine whether counsel’s
performance was deficient before examining the prejudice it may have
caused.  Strickland, 466 U.S. at 699, 104 S.Ct. at 2069.  Thus, even if we assume that the late filing
of this motion was unreasonable, we find no prejudice to Castaneda because there
is no reasonable probability that had the motion been timely filed the outcome
of the trial would have been any different. 
See id., at 694, at 2068.


 Motion to order 404(b) notice


To require the State to provide
reasonable notice of extraneous conduct it intends to introduce in its
case-in-chief, a defendant may either move the court to order the State to
provide notice or he may request notice directly from the State.  Espinosa
v. State, 853 S.W.2d 36, 38-39 (Tex. Crim. App. 1993).  If a request is served directly on the State,
it is self-executing; no further action is required by the trial court.  Id. at 38. 
However, if a defendant files a motion requesting court action, the
State's duty to provide reasonable notice is not triggered until the trial
court rules on the motion.  Mitchell v. State, 982 S.W.2d 425, 427
(Tex. Crim. App. 1998); Espinosa, 853
S.W.2d at 39.

The day before the trial began, counsel
filed a “Rule 404(b) Request for Notice of Intent to Offer Extraneous Conduct” under
Article 37.07, section 3(g) of the Texas Code of Criminal Procedure and Rule
404(b) of the Texas Rules of Criminal Evidence. 
Because an order was attached to this document and there is no
certificate of service showing service on the State, we consider this hybrid motion/request
to be a “motion” for purposes of article 37.07, section 3(g) and Rule 404(b).  See
Valle v. State, 950 S.W.2d 413, 415 (Tex. App.—Houston [1st Dist.] 1997,
pet. ref'd) (holding “Defendant's Request for Notice of State's Intention to
Introduce Evidence of Other Crimes, Wrongs or Acts” was substantively a motion
to the court to order the State to give requisite notice); President v. State, 926 S.W.2d 805, 807-08 (Tex. App.—Austin 1996,
pet. ref'd) (same).  Therefore, the
notice requirement would not have been triggered until the court ruled on the
motion.  Mitchell, 982 S.W.2d at 427.

The motion asked the court to order
the State to give notice, at least 30 days before trial, of any extraneous
conduct the State intends to introduce as evidence.  This motion was considered at the pre-trial
hearing the day before trial, and the trial court noted that the request was
late.  However, the State did inform the
court that there was no extraneous conduct to be introduced.  The court did not grant, deny, or set a
hearing on the motion.  The court wrote
“NONE” on the order attached to the motion and signed the order.

Castaneda argues ineffective
assistance solely because the request was late. 
The State argues that there was no prejudice because there was no
extraneous conduct introduced at trial.

We need not determine whether
counsel’s performance was deficient before examining the prejudice it may have
caused.  Strickland, 466 U.S. at 699, 104 S.Ct. at 2069.  Thus, even if we assume that the failure to
make a timely request for notice of extraneous conduct was unreasonable,[2]
we find no prejudice to Castaneda because the State informed Castaneda at the
pre-trial hearing that no extraneous conduct was going to be offered and no
extraneous conduct was introduced at trial. 
The result of the trial would not have been any different had notice
been received earlier that there was no extraneous conduct the State intended
to offer at trial.  Id. at 694, at 2068.  


 Motion for production of business records


Trial counsel made a motion for
production of business records.  Even
though the motion was untimely, the State produced the only business records it
planned to introduce at trial, which were vehicle registrations.  Castaneda argues ineffective assistance
solely because the request was late.  The
State argues there was no prejudice because Castaneda received the requested
records before trial.

We need not determine whether
counsel’s performance was deficient before examining the prejudice it may have
caused.  Id. at 699, at 2069.  Thus, even if we assume that the late filing
of this motion was unreasonable, we find no prejudice to Castaneda.  Because the only business records introduced
by the State at trial were produced to Castaneda at the pre-trial hearing,
there is no reasonable probability that had the motion been timely filed the
outcome of the trial would have been any different.  See id.
at 694, at 2068.

Having found that Castaneda has
failed to meet the Strickland test
for his three arguments regarding untimely motions, we overrule his issue as to
the untimely motions.

Other
Omissions


 Failure to object to deadly weapon special
 issue during guilt-phase of trial


Neither of the State’s indictments
mentioned the use of a deadly weapon nor was notice provided by the State that
it would seek a deadly weapon finding. 
During voir dire, the State informed the jury, without objection, that
it “has given notice to the defense that it intends to seek the finding of a
deadly weapon with respect to the possession with intent case.”  The State then discussed with the jury why
someone might have a deadly weapon while engaged in this type of criminal
conduct.

During trial, the State introduced
photographs of the two guns and photographs of the drug-related items
seized.  Testimony revealed that the guns
were photographed to show the violent nature of drug dealers.  Castaneda’s counsel objected on the grounds
of relevancy, which the court overruled. 
Testimony also revealed that both guns were loaded.  A detective testified that, based on his
experience as a narcotics officer, firearms have a role in protecting drug
traffickers and intimidating buyers.

The trial court submitted a special
issue to the jury at the end of the guilt phase of the trial:

Do you find beyond a reasonable doubt that the
Defendant RAUL JACOBO CASTANEDA  used or
exhibited a deadly weapon, to wit: a firearm, during the commission of the
offense of possession with intent to deliver a controlled substance, to wit:
Methamphetamine, as alleged in the indictment.

 

The jury answered affirmatively.  This finding was used during the punishment
phase of trial. 

Castaneda argues that a deadly
weapon special issue should be determined by the trier of fact at
punishment.  Castaneda also argues that
this special issue was prejudicial because there was no evidence that he used
the guns to further his drug dealing or that either gun was in the apartment on
that date.  He asserts that other people
had access to the apartment and could have left the guns there and that if he
had intended to use the gun to further his drug activities, he would have taken
it with him when he went to transact the sale. 
He argues that his counsel could have made relevance and Rule 403
objections.

The State argues that it is not
improper to have a deadly weapon special issue during the guilt-phase of trial
and an objection on this basis would have been frivolous.  The State also argues that the evidence of
the guns was relevant to show that Castaneda was engaged in drug trafficking;
therefore, the trial court properly overruled trial counsel’s relevance
objection.  Also, the State asserts that
because the guns are just one type of tool used in the drug trade, their
probative value was not outweighed by any danger of unfair prejudice.

The Texas Court of Criminal Appeals has
said the deadly weapon special issue can be submitted at either the guilt-phase
of trial or the punishment stage.  Polk v. State, 693 S.W.2d 391, 394 (Tex.
Crim. App. 1985).  It, however, has
stated that the “better practice is to submit the deadly weapons special issue
charge at the guilt/innocence phase of the trial.”  Hill v.
State, 913 S.W.2d 581, 586 (Tex. Crim. App. 1996).  In possession cases, a weapon is “used” when
it is found in close proximity to drugs because the weapon protects the
defendant’s care, custody, and management of the contraband.  Gale v.
State, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999).

Because the gun evidence was
admissible and it is not improper to submit this special issue during the
guilt-phase of trial, counsel could have reasonably perceived that an objection
to the issue would have been fruitless.  See Hill, 913 S.W.2d at 586; Gale, 998 S.W.2d at 224; Moore, 4 S.W.3d at 275; Cooper, 707 S.W.2d at 689. 
Counsel was within bounds of professional competence in not making such
an objection, and Castaneda has failed to overcome the presumption of
reasonableness based on the record.  See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Therefore, we overrule Castaneda’s issue as
to the failure to object to the deadly weapon special issue during the
guilt-phase of trial.




 


 Failure to move to suppress guns seized


Police seized the guns in the
apartment through a search warrant.  To
obtain the search warrant, the State presented an affidavit that alleged
Castaneda was in possession of items constituting “evidence of illegal
manufacturing and distribution of methamphetamine.”

Castaneda argues that the guns were
obtained outside the scope of the warrant because it did not authorize the
seizure of lawfully possessed guns and there is no evidence that the guns were
used in the commission of the offense. 
He contends they are not instrumentalities of the offense and had his
trial counsel filed a motion to suppress, they would not have come before the
jury.

The State argues that Castaneda has
not shown that a motion to suppress the guns, if made, would have been
granted.  The State contends that the
guns are instrumentalities of the charged offense because the proximity of the
guns to the contraband demonstrates they were “used” to further his drug
dealings and constitute evidence of his drug trafficking.

We find that the guns seized would
be admissible because they were “used” during the commission of the possession
offense.  See Gale, 998 S.W.2d at
224.  Castaneda has failed to meet the Strickland test because he has failed to
point to evidence in the record to show that if a motion to suppress had been
filed, it would have been granted.  See Jackson, 972 S.W.2d at 957.  Therefore, we overrule Castaneda’s issue as
to failure to move to suppress the evidence of the guns.




 


 Failure to object to testimony regarding
 his ethnicity


Castaneda was linked to two
vehicles, which displayed decals that read “Purro Michoacan.”  The State presented the testimony of four
narcotics officers who stated that Michoacan is a state in Mexico where large quantities of methamphetamine are
produced and shipped to the United States.

Castaneda argues that the testimony
from the State’s witnesses led the jury to believe that people from Michoacan
are drug traffickers by nationality.  He
argues that his trial counsel failed to object that these comments violated his
equal protection and due process rights and therefore failed to preserve a
complaint for appeal.  He contends that
had his trial counsel made these objections, the State would have been
prevented from portraying him as “a dishonest Mexican who was from a cesspool
of drug dealers.”  

The State argues that this testimony
was presented to show that the Mexican state is likely a source of Castaneda’s
contraband and not to show that he was from Michoacan and therefore guilty
because of his nationality.  The State
contends that an objection to this testimony would have been frivolous.

“Racial and ethnic distinctions of
any sort are inherently suspect and thus call for the most exacting judicial
examination.”  Regents of Univ. of Cal. v.
Bakke, 438 U.S. 265, 291, 98 S.Ct. 2733, 2748, 57 L.Ed.2d 750
(1978).

Texas rules require defendants to object at trial in
order to preserve complaints for review on appeal.  The Texas Court of Criminal Appeals, despite
a confession of error to the United States Supreme Court by the Texas Attorney
General and a remand from the United States Supreme Court, specifically held
that “a defendant’s failure to object to testimony prevents his raising on
appeal a claim that the testimony was offered for the sole purpose of appealing
to the potential racial prejudices of the jury.”  Saldano
v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002).  In Saldano,
a clinical psychologist testified “that blacks and Hispanics are
over-represented in the criminal justice system” and that the appellant, an
Argentinean, “would be considered a Hispanic.” 
Id. at 885. 
Since appellant’s counsel did not object to this testimony, the court
held that any complaint was not preserved for appellate review.  Id. at 885, 890. 
However, the court did note a recent holding in Garcia v. State that when defense counsel presented evidence to the
jury through the same clinical psychologist that “blacks and Hispanics are
overrepresented in the . . . so-called dangerous population,” counsel’s
performance did not fall below an objective standard of reasonableness.  Saldano,
70 S.W.3d at 885-86 (citing Garcia v.
State, 57 S.W.3d 436 (Tex. Crim. App. 2001)).  In Garcia,
the court held that “[c]ounsel might have been attempting with [the clinical
psychologist’s] testimony, to do two things: (1) place before the jury all the
factors it might use against appellant, either properly or improperly, in its
assessment of his future dangerousness and (2) persuade the jury that, despite
all those negative factors, appellant would not be a future danger if imprisoned
for life because the prison system’s procedures and techniques would control or
eliminate his tendency toward violence.” 
Garcia v. State, 57 S.W.3d
436, 440-41 (Tex. Crim. App. 2001).

In United States v. Doe, the prosecutor called an expert witness who
was allowed to describe, over defense counsel’s objection: (1) the “modus
operandi” of Jamaican drug dealers; (2) that the Jamaicans have had a
phenomenal impact on the drug trade in the District of Columbia; and (3) that
Jamaicans had taken over the local drug market by commandeering the apartments
of Washingtonians and using them as preparation and distribution centers.  United
 States v. Doe, 903 F.2d 16, 18 (D.C. Cir. 1990).  The prosecutor in summation also referred to
the defendants as Jamaicans and stressed this expert’s testimony.  Id.  The D.C.
Circuit Court stated that “discrimination on the basis of race, odious in all
aspects, is especially pernicious in the administration of justice.”  Id. at 21.  It
also stated that “[b]ecause of the risk that the factor of race may enter the
criminal justice process, we have engaged in ‘unceasing efforts’ to eradicate
racial prejudice from our criminal justice system.”  Id. (citing McCleskey
v. Kemp, 481 U.S. 279, 309, 107 S.Ct. 1756, 1775, 95 L.Ed.2d 262,
289 (1987) (citing Batson v. Kentucky,
476 U.S. 79, 85 (1986))).  The court then held that distinctions based
on ancestry are as “odious” and “suspect” as those predicated on race because
appeals to either threaten the fairness of a trial.  Id. at 21-22. 
The court refused to “quibble,” as did the State, over whether the
remarks about Jamaicans referred strictly to race, because they felt it “simply
does not matter.”  Id. at 21.

In United States v. Vue, appellants of Hmong descent challenged the
trial court’s admission of testimony related to the likelihood that persons of
Hmong descent are involved in opium smuggling. 
United States v. Vue, 13 F.3d 1206, 1211 (8th Cir. 1994).  Some of the testimony included statements by
a customs supervisor referring to “a Hmong opium smuggling parcel” and that
“there are other populations of individuals from Southeast Asia in the Twin
Cities area, but primarily the opium smuggling cases we have identified or
we’ve investigated relate to Hmong individuals.”  Id. at 1212. 
The Eighth Circuit Court reversed appellants’ convictions because “after
having read and reread the transcript of all of the questioning of [the customs
supervisor], we cannot say either that the error in allowing the introduction
of the evidence objected to – the likelihood of the involvement in opium
smuggling of persons of Hmong descent – was harmless beyond a reasonable doubt,
. . . or that we do not have grave doubt with respect to whether the outcome of
the trial was substantially influenced by the introduction of that
evidence.”  Id. at 1213 (citations omitted).  The court believed this error was “of
constitutional dimension, because the injection of ethnicity into the trial
clearly invited the jury to put the [appellants’] racial and cultural
background into the balance in determining their guilt.”  Id.  The
court viewed this error “as a serious trespass on due process and equal
protection” and stated that “[f]ormal equality before the law is the bedrock of
our legal system, and we are determined that that principle will not be
undermined.”  Id.

In United States v. Rodriguez Cortes, a Colombian identification card
was admitted into evidence after defendant’s in limine motion to exclude the
card was denied because the trial court found its probative value outweighed
its prejudicial effect.  United
 States v. Rodriguez Cortes, 949 F.2d 532, 540 (1st Cir. 1991).  The First Circuit Court found that the
district court abused its discretion in admitting the identification card.  Id. at 541. 
“Whether or not intended, the effect of the introduction of the
identification card into evidence was to allow the jury to determine guilt based
on [the defendant’s] supposed nationality.” 
Id.  Comments
by the prosecutor in closing argument regarding defendant’s Colombian
nationality, “could be taken as an appeal to the jurors to find the defendant
guilty by reason of his national origin, inviting them to believe that if a
person is born in Colombia, then he must be involved in drug trafficking.”  Id.  This
card was used as the basis for making generalizations about all Colombians;
therefore it is more likely that whatever preconceived notions the jury had
about Colombians and drug trafficking would infect the deliberations.  Id. at 542. The court held that this is precisely
the prejudice that Rule 403 is intended to guard against.  Id. at 541.

Texas courts have long held that race or national origin
of a defendant is an inappropriate focal point for argument by the State,
particularly in light of the times.  See Marx v. State, 141 Tex. Crim. 628,
150 S.W.2d 1014, 1016-17 (1941) (“Gentlemen of the jury, we have this man of
Germany – this man or beast . . .” comments held to be error because they were
inflammatory and were calculated at such time to unfairly influence the jury
against the appellant); Richardson v.
State, 158 Tex. Crim. 536, 257 S.W.2d 308, 309 (1953) (“This negro is a
lustful animal . . . he lacks the very fundamental elements of mankind”
comments held to be inflammatory and may well have been utilized by the jury in
assessing the death penalty; therefore, defendant did not have a fair trial
with these words ringing in the jury’s ears).

In Riascos v. State, appellant was convicted of murder, and the
appellate court remanded for a new trial. 
Riascos v. State, 792 S.W.2d
754, 755, 758 (Tex. App.—Houston [14th Dist.] 1990, pet. ref’d).  The evidence showed that there was a killing
related to a $200 debt of an unknown character. 
Id. at 758. 
The appellant argued that he was denied effective assistance of counsel
because his counsel: (1) failed to object when the State referred to appellant
as a “Colombian illegal alien”; (2) failed to object when the State developed a
scenario that this was a drug related murder without competent evidence and
when the arresting officer testified that he gets “assigned the majority of
Colombian drug related homicides”; and (3) opened the door to extraneous
offenses committed by appellant during the testimony of an alibi witness.  Id. at 756-58. 
The appellate court stated that “[w]e cannot say beyond a reasonable
doubt that the irregularities of the trial made no contribution to the
conviction of appellant or to his punishment.” 
Id. at 758. 
The appellate court held:

The State unduly inflamed the jury to the
prejudice of appellant.  No reasonable
argument can be brought to suggest the defense allowed the events to take place
in the interests of trial strategy. 
Competent counsel would have objected, obtained jury instruction and
moved for a mistrial on each occasion. 
The cumulative effect of the errors pointed out by appellant is
outrageous and we must remand for a new trial as to both guilt or innocence and
punishment.

 

Id.

 

In Cuero v. State, appellant argued that the trial court committed
reversible error when it overruled his objection to the admission of evidence
of appellant’s Colombian nationality because the State wrongfully invited the
jury to infer his guilt from this evidence, which denied him a right to a fair
trial in violation of his Texas constitutional rights.  Cuero v. State, No. 01-93-00989-CR, 1994
Tex. App. LEXIS 2739, *13 (Tex. App.—Houston [1st
Dist.] 1994, no pet.) (not designated for publication).  Appellant’s trial counsel did not object to
all references made to “Colombians” and therefore the appellate court held
nothing was presented for appellate review. 
Id. at *16. 
However, the court did note that even if appellant had preserved his
complaint, his argument had no merit because: (1) they were passing references
made by one State’s witness who was recounting a statement made by one of the
participants in the drug transaction at issue; (2) the State did not emphasize
or even refer to appellant’s nationality in its closing argument; and (3)
appellant did not direct the court’s attention to any other part of the record
where the State attempted to improperly utilize his nationality.  Id. at *17.

Taking this case law into
consideration, we have reviewed the testimony and evidence in detail.  During the surveillance of Castaneda’s
activities, the undercover officer and the confidential informant made contacts
with Castaneda.  The surveillance was
recorded and all of the parties on the tape spoke in Spanish, including the
Hispanic voice heard who was later identified as Castaneda.  A Spanish speaking officer helped monitor the
surveillance.  At trial, these tapes were
played and a translation in English was provided to the jury.  When Castaneda was pulled over, the
conversation with the officer was in Spanish.

When asked about the “close-up
writing on the back” of the white pickup truck, one narcotics officer
responded: “The Michoacan is a well-known area in Mexico where they manufacture methamphetamine, they
are notorious for that.”  When another
officer was asked what “Purro Michoacan” means, he replied: “Pure
Michoacan.  Michoacan is a state in Mexico, down south in Mexico, and Purro is pure, Michoacan.”  When this same officer was asked what this
means to him based on his experience as a narcotics officer, he replied:
“Michoacan is a state known in Mexico that provides a lot of heroin and
methamphetamine.  It’s actually more
known for heroin than anything else.  A
lot of heroin that comes into the United States comes from the state of Michoacan.”  Castaneda’s trial counsel objected to this
testimony for lack of foundation, which was overruled.  He also objected as to the irrelevancy of the
testimony about heroin, which was sustained as to heroin and the jury was
instructed to disregard as to heroin. 
Trial counsel’s request to strike the answer was denied.  The testimony of this officer continued with
the question by the State: “Based on, again your some 14, 15 years of experience
as a narcotics officer, that’s restricted to that state being known for it’s
methamphetamine, is it one of the higher producing methamphetamine Mexican
states?”  The officer replied: “Yes, it
is.”

Another officer testified regarding
what the writing on the back of the pickup truck means to him as a narcotics
officer: “In my experience I have had experience in the past where I learned
that Michoacan was a state in Mexico that was known among narcotics
investigators to be a state that is known to produce large quantities of
methamphetamine that are shipped into America.”[3]  Finally, another narcotics officer was asked
based on his experience, whether he was familiar with the location of Michoacan
in Mexico.  He
replied: “A lot of the Mexico drug traffickers who specialize in the
manufacture and distribution of methamphetamine hail from that particular
state.”

An officer testified regarding
miscellaneous papers found in the apartment during the search.  He stated that “[m]ost of them are wire
transfers from Western
 Union from America to Michoacan or Pachuca, Mexico.”  This
officer was then asked: “is that the same Mexican state that was on the – on
the two vehicles that were involved in the incident.”  He responded: “Yes, it is.”  The State did not mention Michoacan in its closing
argument.

The record fails to contain any
information regarding trial counsel’s rationale for failing to object to the
testimony regarding Michoacan.  Castaneda
has not overcome the strong presumption that his counsel’s actions might have
been sound trial strategy.  See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  Therefore, we cannot say that this conduct is
so outrageous that no competent attorney would have engaged in it.  See
Garcia, 57 S.W.3d at 440.  For an
undetermined reason, counsel did not object, and only further inquiry will
provide the information necessary to make the proper determination whether he
provided the effective assistance envisioned under the Sixth Amendment.  Thompson,
9 S.W.3d at 814.  Therefore, we overrule
Castaneda’s issue as to failure to object to testimony regarding his ethnicity.

CONCLUSION

Because we overrule Castaneda’s
single issue in its entirety, we affirm the judgment.

 

BILL VANCE

Justice

 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion delivered and filed December
 29, 2004

Do not publish

[CRPM]











    [1]       Castaneda was linked to this truck
through the registration and testimony that he was stopped in the white
Mustang, but his keychain contained keys to this truck, which was found parked
at his apartment.  Although, the white
Mustang was not registered to Castaneda, he was linked to it because he was
stopped while driving it and the keychain contained keys to both the Mustang
and the truck.





    [2]       A majority of this court has recently
held that there can be no strategic basis for not requesting notice under Texas
Code of Criminal Procedure article 37.07 section 3(g).  Loredo
v. State, No. 10-01-00078-CR, 2004 Tex. App. LEXIS 11122, *7 (Tex. App.—Waco Dec. 8, 2004, no pet.).





    [3]       Castaneda’s trial counsel objected based
on relevancy of other cases when this officer first started to answer with
“it’s significant to me because one of the first major cases that I ever worked
on was a methamphetamine case, and –.” 
This objection was sustained and the officer continued to testify.