In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00103-CR


______________________________




BENITO SANTOS AGUILAR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 35679-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Benito Santos Aguilar stood before the trial court--aided by a Spanish interpreter--accused
of driving while intoxicated (DWI), having had two previous convictions for DWI. Aguilar pled
guilty without a plea agreement and sought community supervision rather than jail time. In the
dialogue with the trial court, Aguilar admitted that he was in the United States illegally. He
stipulated to evidence that, on the occasion in question, he drove a motor vehicle while intoxicated
and that he had previously been convicted of two prior DWIs. There was also evidence that Aguilar,
after this offense, had been arrested for DWI on two later occasions. The trial court accepted the
guilty plea, rejected the request for community supervision, and sentenced Aguilar to five years'
imprisonment.

 On appeal, Aguilar contends the trial court abused its sentencing discretion as shown by
"racist" remarks. The portion of the record in question is the trial court's response to counsel's
request for community supervision:

 [Defense Counsel]: He wants probation, he's a hard worker, he's got a
family here he needs to care for, on his behalf, I ask you to consider placing him on
probation.


 THE COURT: Okay. He mentions that his family needs him. Well,
he sure wasn't thinking about his family when he was out there on the road all tanked
up. But I'm thinking about a family, I'm thinking about those families that are out
there on the highways, minding their own business and there are Benito Aguilars out
there tanked up on the road and what could happen when that occurs. And I ain't
going to let it happen on my watch under the facts of this case.


In support of the argument, counsel points out that the court asked Aguilar, at the time he waived
a jury trial, whether he was a citizen and that, on finding out that he was not, the court warned him
deportation might follow any conviction. Counsel implies that this is improper because it is not
required by law or custom at that point in the proceedings.

 Counsel also acknowledges that the trial court repeated this sequence when Aguilar pled
guilty and that such inquiry is mandated by Article 26.13 of the Texas Code of Criminal Procedure. 
See Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2008).

 Counsel directs our attention to cases in which defense counsel's racially specific and
negative  references  to  his  or  her  own  client  can  constitute  ineffective  assistance  of  counsel. 
See Ex parte Guzmon, 730 S.W.2d 724, 726 (Tex. Crim. App. 1987) (counsel referred to client as
"wetback"); Ramirez v. State, 65 S.W.3d 156, 157 (Tex. App.--Amarillo 2001, pet. ref'd) (counsel
argued that jury not consider client a "drunk Mexican").

 First, we note that here there was no objection to any of the trial court's comments and that
counsel also made no objection later--when asked whether there was any reason for sentence not
to be pronounced--and, in fact, said he had no legal reason for sentence not to be pronounced at that
time. In the absence of any timely complaint by counsel, the claimed error has not been preserved
for appellate review. Tex. R. App. P. 33.1. 

 Even if the complaint had been properly preserved, we do not read such racial implications
into these statements. The trial court stated that it would not let the drunken "Benito Aguilars" of
the world back onto the roadway to endanger other families and that it would not allow such to
happen with this person in this case. It was a generic statement of intent to enforce the law and
sentence as it saw necessary to protect the public. The trial court's comments were not perjorative
to Hispanics, nor were they race-specific in any fashion, beyond using the name of the defendant. 
Using a defendant's name in such a fashion does not make a statement racist.

 We overrule the point of error and affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: December 1, 2008

Date Decided: December 2, 2008


Do Not Publish



lse"
 UnhideWhenUsed="false" Name="Medium List 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00017-CR

                                                ______________________________

 

 

                      MARICELA RODRIGUEZ GUTIERREZ,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 7th Judicial District Court

                                                             Smith County, Texas

                                                      Trial Court No. 007-80280-99

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            On May 12,
2004, when Maricela Rodriguez Gutierrez was placed on community supervision,[1]
she agreed her community supervision status would subject her to twenty-nine supervisory
conditions.[2]  Fifteen of those conditions were general
conditions, seven were financial, two were drug-related, two were
education-related, and three were immigration-related.  Only one of those
conditionsimmigration-relatedis at issue here.

            At the time the
trial court heard the States motion to revoke[3]
Gutierrez community supervision, the sole evidence was that she had violated a
single conditionthat she failed to leave the United States after not obtaining
legalized immigration status by a stated deadline.  Interestingly, the State did not allege that
she had violated condition number one, obeying the law.  Finding only that condition sixty was
violatedher failure to leave the country after failing to get legal status by
a stated deadlinethe trial court revoked Gutierrezs community supervision
December 1, 2010.

            On appeal,
Gutierrez argues that the term requiring that she leave the United States was
void and, thus, cannot support her revocation. 
Because the federal government has exclusive jurisdiction to deport or
accept immigrants, we must agree.  Thus,
we reverse the revocation and render judgment that Gutierrezs community
supervision not be revoked on this basis. 

            Two
major principles collide in this appeal.

 

            The first
major principle is that, under Texas law, an award of community supervision is
not a right, but a contractual privilege; and its conditions are terms of the
contract entered into between the trial court and the defendant.  Therefore, conditions to which the defendant
does not object are affirmatively accepted as terms of the contract.  Speth
v. State, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  They are part of the judgment, but not part
of the sentence.  Id.  Consistent with that
concept, under Texas law, a defendant is sentenced, but the sentence is
suspended and the defendant is placed on community supervision pursuant to the
conditions of community supervision.

            The other
major principle in this casethe one that must have supremacy hereis that the
regulation of immigration is unquestionably exclusively a federal power.  De
Canas v. Bica, 424 U.S. 351, 354 (1976). 
This has been recognized explicitly by the Texas Court of Criminal
Appeals.  See Hernandez v. State,
613 S.W.2d 287, 290 (Tex. Crim. App. 1981) (op. on rehg).

            At
the time her community supervision was imposed, Gutierrez made no objection
that the terms and conditions were unlawful, and did not appeal from that
judgment.  Under normal conditions, a
defendant cannot complain about community supervision conditions for the first
time on appeal from revocation.  Speth, 6 S.W.3d at 535; Lindley v. State, 331 S.W.3d 1, 5 (Tex.
App.Texarkana 2010, no pet.).[4]  One exception to this general rule that
appellant relies on is that for a void judgment, which is a nullity and can
be attacked at any time.  See Nix v. State, 65 S.W.3d 664, 66769
(Tex. Crim. App. 2001); Crume v. State,
342 S.W.3d 241 (Tex. App.Beaumont 2011, no pet.); Martinez v. State, 194 S.W.3d 699, 701 (Tex. App.Houston [14th
Dist.] 2006, no pet.).  Under that
exception, where an original judgment imposing community supervision is void,
there is no judgment imposing community supervision, and, accordingly, nothing
to revoke.  Nix, 65 S.W.3d at 66869.  As discussed below, there is also a question
of whether a condition that is void may be enforcedunder more than one theory
of law.

            Here, the
judgment itself cannot be considered void. 
The conditions of community supervision ancillary to the judgment
contain a term that, if directly attacked, would certainly be found
unlawful.  A void judgment, however, is a
different creature.

But a judgment is void only in very rare
situationsusually due to a lack of jurisdiction.  In civil cases, a judgment is void only when
there was no jurisdiction of the parties or property, no jurisdiction of the
subject matter, no jurisdiction to enter a particular judgment, or no capacity
to act as a court.  This rule is
essentially paralleled in criminal cases. 
A judgment of conviction for a crime is void when (1) the document
purporting to be a charging instrument (i.e. indictment, information, or
complaint) does not satisfy the constitutional requisites of a charging
instrument, thus the trial court has no jurisdiction over the defendant, (2)
the trial court lacks subject matter jurisdiction over the offense charged,
such as when a misdemeanor involving official misconduct is tried in a county
court at law, (3) the record reflects that there is no evidence to support the
conviction, or (4) an indigent defendant is required to face criminal trial
proceedings without appointed counsel, when such has not been waived, in
violation of Gideon v. Wainwright.  While we hesitate to call this an exclusive
list, it is very nearly so.

 

Nix, 65 S.W.3d at
668.  Under that description, we cannot
agree that the judgment in this case is void. 
At most, the one condition used to revoke Gutierrez community
supervision was outside the authority or power of the trial court to
impose.  As it could be easily severed
from the entirety of the judgment, such a fact does not make the entire
judgment void.

            Factually,
this situation is very similar to that described in Hernandez.  See Hernandez,
613 S.W.2d at 290.  As in Hernandez, Gutierrez did not appeal from
the order placing her on community supervision, but instead appeals from the
revocation of community supervision.  As
in Hernandez, community supervision
was revoked based on a single alleged violation of the conditions of supervisionthe
condition requiring the alien defendant to leave the United States.  In both cases, we have a state court
intruding into an area exclusively within the authority of the federal
governmentand at that, within the authority of the executive branch, not even
of the federal judiciary.

            In
Hernandez, the Texas Court of
Criminal Appeals did not discuss the contractual nature of conditions of community
supervision.[5]  It also did not apply any theory of
preservation of error.  The high court
instead directly addressed the issue, focusing on the trial courts total lack
of authority to impose any such condition and noting that the only reasons for
revoking community supervision in that case were violations of conditions the
trial court had no power to impose in the first place.

            After
providing a concise explanation of the supremacy of the national power over
immigration, naturalization, and deportation based on the Supremacy Clause of
the United States Constitution, the court held that the conditions of community
supervision ordering Hernandez to remain in the Republic of Mexico and not to
re-enter the United States without prior written consent of the trial court
were void.  Based on that determination,
the high court then held that, since community supervision was revoked only for
violations of these two conditions, the revocation could not stand.  Hernandez,
613 S.W.2d at 290.

            The sole
distinction between these cases lies in the fact that Gutierrez, unlike
Hernandez, did not go to Mexico and then return.  In the present case, Gutierrez did not obey
the trial courts directive to go to Mexico unless she obtained legal status
allowing her to lawfully remain in the United Statesand the court found that
she had violated a term of her community supervision by failing to leave.  Although the distinction does exist, it is a
distinction that makes no difference.

            Accordingly,
the outcome of this appeal turns solely on whether, despite Hernandez, we conclude that this issue
was waived.

            The State
properly acknowledges the authority of the Federal government over all matters
involving immigration and deportation. 
The States argument is based on concepts of waiver and
preservation.  In short, the State argues
that, since Gutierrez did not complain about an unlawfully imposed condition at
the time it was imposed, she cannot complain about it now.  There is support for that position.  In Speth,
a 1999 decision, it was recognized that a trial court abuses its discretion by
imposing unlawful conditions on community supervision.  Speth,
6 S.W.3d at 534.

Thus, by entering into the contractual
relationship without objection, a defendant affirmatively waives any rights
encroached upon by the terms of the contract. 
A defendant who benefits from the contractual privilege of probation,
the granting of which does not involve a systemic right or prohibition, must
complain at trial to conditions he finds objectionable.

 

Id.  As the exact language used is of some
importance, we quote:

 

We do not hold that a trial court does not abuse
its discretion by imposing conditions that are unreasonable or violate
constitutional rights or statutory provisions. 
But such defects must be timely objected to in order to be raised on
appeal.

 

Id. at 534 n.10.  That language categorically states that, even
violations of constitutional rights must be objected to, else the defendant
risks waiver.[6]

            In
this case, the trial court did not inform Gutierrez of the existence of this
condition in open court during the plea proceeding.  Thus, it would be impossible to have objected
at trial.  The condition was imposed as
one of the written conditions, which were signed by the defendant and judge on
the date of the judgment:  May 12,
2004.  The record, however, also contains
no later effort to bring the error to the trial courts attention.

            Hernandez has not been discussed or
otherwise addressed by a Texas court, except in 1997, when the San Antonio
Court of Appeals, in an unpublished opinion, simply noted that, if a noncitizen
defendant went to his or her native country, but then re-entered the United
States illegally, he or she would violate the law, and that violation could
violate the terms of community supervision. 
See Mancha v. State, No.
04-95-00849-CR, 1997 WL 214823, at *23 (Tex. App.San Antonio Apr. 30, 1997,
no pet.) (mem. op., not designated for publication).  Hernandez,
therefore, remains controlling authority requiring reversal of this case,
unless we determine that Speth and
its progeny overruled the analysis sub
silentio.

            After
examining the two cases, we do not believe that Speth and Hernandez are mutually
exclusive.  The language in Speth that appears to control the
outcome says:

An award of community supervision is not a
right, but a contractual privilege, and conditions thereof are terms of the
contract entered into between the trial court and the defendant.  Therefore, conditions not objected to are
affirmatively accepted as terms of the contract.

 

Speth, 6 S.W.3d
530, 534.

 

We do not hold that a trial court does not abuse
its discretion by imposing conditions that are unreasonable or violate
constitutional rights or statutory provisions. 
But such defects must be timely objected to in order to be raised on
appeal.

 

Id. at
534 n.10.  Hernandez holds that

 

the conditions of probation that ordered
appellant to remain in the Republic of Mexico and not re-enter the United
States without prior written consent of the court are void.  Since probation was revoked only for
violations of these conditions, it was an abuse of discretion to revoke
probation.

 

Hernandez, 613
S.W.2d at 290.  According to Speth, you can contract for, and be
bound by, unconstitutional conditions of community supervision, such conditions
being described by the court as a defect. 
Failure to object results in waiver of the defect.  But Hernandez
says the trial court had no power to do what it did.  According to Hernandez, the unlawful condition, one the court had no authority
to employ, was void and thus could not be enforced.  The condition is not merely unreasonable, and
it does not merely violate a constitutional right of the defendant.  It violates the exclusive authority of the
United States of America to absolutely control immigration to, and banishment
from, the United States.  The condition
itself violated the Supremacy Clause of the United States Constitution.

            Accordingly,
we conclude, in accordance with Hernandez,
that the condition is void, and that the revocation, premised solely on
Gutierrez violation of that condition, cannot stand.

            We
reverse the order revoking Gutierrez community supervision.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          September
12, 2011

Date Decided:             October
7, 2011

 

Publish











[1]Gutierrez
was convicted for possession of a controlled substance, and placed on ten years
community supervision.  Her conviction
was pursuant to a plea agreement.  The
written order containing the conditions of her community supervision, consistent
with the oral order, required her to contact legal authorities within ten days
to start proceedings for legalization of her immigration status and complete
filing of all paperwork within ninety days. 
The written order then went far beyond the oral pronouncement, ordering
her at the end of twelve months, if she did not obtain legal status, to leave
the country and reside in a location where you do have a legally authorized
status.  It appears that, during the
following four years, she took various actions, filed the requisite paperwork, and
obtained extensions from the trial court, but did not obtain a legally
authorized status in the United States or leave the country.  Her counsel stated at the revocation hearing
that she had four children who were United States citizens, two of whom have
Downs Syndrome.  It appears that she
sought a legalized immigration status based on her relationship with a person
legally within this country.

 





[2]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (West 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.

 





[3]In
July 2010, the State filed a motion to revoke. 
The State alleged two violations, but abandoned its claim that she had
failed to file the requisite paperwork to seek legal status.  The State proceeded based on her failure to
meet one requirement of the conditions of her community supervision:  in the absence of obtaining permission from
the federal authorities to remain formally in the country, she broke the terms
of her community supervision by failing to leave the country and reside in a
location where she had a legally authorized status.  She pled true to the allegation.  The trial court revoked her community
supervision and sentenced her to five years confinement.





[4]An
appeal from an order revoking community supervision is limited to the propriety
of the revocation.  Corley v. State, 782 S.W.2d 859, 860, n.2 (Tex. Crim. App.
1989).  In such appeals, the court has
allowed defendants the opportunity to raise errors made at the plea hearing
but, as in all other collateral attacks on a judgment, the defendant is
restricted to pleading and proving fundamental error that makes the judgment
void.  Traylor v. State, 561 S.W.2d 492, 494 (Tex. Crim. App. 1978).





[5]At
that time, as now, the courts recognized that, when a trial court grants community
supervision, the court and the probationer have a contractual relationship, and
the conditions of community supervision should be clearly set forth in the
courts judgments and orders so that the probationer and the authorities know
the conditions with certainty.  McDonald v. State, 442 S.W.2d 386, 387 (Tex.
Crim. App. 1969).





[6]This
language would not assist a party in understanding how or when to seek relief
when a court later adds new conditions or amends conditions already in
existence.