# NO. 12-19-00327-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *EX PARTE:* | § | *APPEAL FROM THE* |
|  | § | *COUNTY COURT AT LAW* |
| *CHARLES WILLIAM NICHOLS* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Charles William Nichols appeals the trial court's denial of an evidentiary writ hearing. In three issues, Appellant argues that the trial court erred by denying an evidentiary hearing on the questions of whether he received ineffective assistance of counsel because his trial counsel (1) failed to object to commitment questions and statements during voir dire, (2) failed to request testimony regarding potential juror misconduct, and (3) made prejudicial references to and elicited prejudicial testimony from Appellant at trial. We affirm.

## BACKGROUND

Appellant was convicted of driving while intoxicated and sentenced to confinement for 365 days, suspended for a term of twelve months. Subsequently, he filed an application for writ of habeas corpus alleging six grounds of ineffective assistance of counsel. Appellant requested an evidentiary hearing on the matter, and, in the alternative, an order that his trial counsel, John Eastland, submit an affidavit addressing the allegations. A hearing was held to determine whether an evidentiary hearing was needed. Relying on the arguments of counsel at the hearing and the trial judge's personal recollection of the trial, the trial court denied as frivolous grounds one, three, four, five, and six of the application, scheduled a hearing on ground two, and ordered Eastland to submit an affidavit addressing ground two. Appellant subsequently abandoned ground two because he was unable to obtain expert support for the allegation. This appeal followed.

<u>**DENIAL OF EVIDENTIARY HEARING**</u>

In Appellant's first, second, and third issues, respectively, he argues that the trial court erred by denying an evidentiary hearing on grounds one, five, and six of his writ application.

<u>**Standard of Review and Applicable Law**</u>

Texas Code of Criminal Procedure Article 11.072 establishes the procedures for an application for a writ of habeas corpus when the applicant seeks relief from a judgment of conviction ordering community supervision. TEX. CODE CRIM. PROC. ANN. art. 11.072 § 1 (West 2005). In determining whether to grant or deny relief, the trial court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the trial judge's personal recollection. *Id.* § 6(b). If the court determines from the face of the application or documents attached to it that the applicant is manifestly entitled to no relief, it must enter a written order denying the application as frivolous. *Id.* § 7(a). In any other case, the court must enter a written order including findings of fact and conclusions of law. *Id.* A writ hearing is not required if the fact-finding procedure employed was adequate for reaching reasonably correct results. *See Ex parte Davila*, 530 S.W.2d 543, 545 (Tex. Crim. App. 1975) (op. on reh'g); *Ex parte Salazar*, 510 S.W.3d 619, 627 (Tex. App.—El Paso 2016, pet. ref'd) (evidentiary hearing not required when issues can be resolved without one).

An applicant must establish the two prongs of the United States Supreme Court's test in *Strickland v. Washington* to prevail in an ineffective assistance of counsel claim. 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, he must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, the applicant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, the applicant must show that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an applicant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. An applicant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. ***Mitchell v. State***, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. ***Tong***, 25 S.W.3d at 712. The reviewer indulges in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Strickland***, 466 U.S. at 689, 104 S. Ct. at 2065. It is the applicant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. ***Id.***; ***Tong***, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. ***Thompson v. State***, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. ***Id.*** An applicant must prove both prongs of the ***Strickland*** test by a preponderance of the evidence in order to prevail. ***Tong***, 25 S.W.3d at 712.

## Ground One—Failure to Address Commitment Questions and Statements

In Appellant's first issue, he argues that the trial court erred by denying an evidentiary hearing on the issue of Eastland's failure to object to or otherwise address the State's use of commitment questions and statements regarding the word "operating" during voir dire. To satisfy the elements of DWI, the State was required to prove that Appellant "operated" a motor vehicle in a public place while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2019). The penal code does not define "operating." ***Kirsch v. State***, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). When statutory language is undefined, jurors may freely read it to have any meaning that is acceptable in common parlance. ***Id.*** In the context of evidentiary sufficiency, the court of criminal appeals defines "operation" as occurring when "the totality of the circumstances [] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." ***Id.*** at 650-51. However, including this definition in the jury charge improperly impinges on the jury's fact-finding authority by limiting their understanding of what evidence could constitute "operating." ***Id.*** at 652. When a term is undefined in the jury

3

charge, we presume that the jury attached a common understanding to the meaning of the term. *McAfee v. State*, 467 S.W.3d 622, 640 (Tex. App.—Houston [1st Dist.] 2015, pet ref'd).

During voir dire, the following occurred:

> PROSECUTOR: Operating a vehicle. And that's determined based on all the issues that demonstrates [sic] that a defendant took action to affect a functioning of the vehicle in a manner that would enable the vehicle's use. It is not required that the defendant be able to move. It's not required that the vehicle had to move. It is defendant took action to affect the functioning of the vehicle in a manner that would enable the vehicle's use. What is that? Does anybody remember when they first learned to drive, when you first learned to operate a motor vehicle?
>
> UNIDENTIFIED JUROR: We put the key in the ignition.
>
> PROSECUTOR: Put the key in the ignition. Put the key in the ignition. Anybody teaching one to drive? Anybody brave enough to teach their teenager how to drive? A few? Ms. Murray, you raised your hand, and you've taught someone how to drive? I think, Ms. Cleveland, did you raise your hand?
>
> JUROR CLEVELAND: Yes.
>
> PROSECUTOR: What is it—what's operating—all right. Ms. Van Deman.
>
> JUROR VAN DEMAN: Yes, ma'am.
>
> PROSECUTOR: You taught someone who is operating, put the key in the ignition. What else?
>
> JUROR VAN DEMAN: Being in the driver's seat.
>
> PROSECUTOR: Being in the driver's seat. You're in control of that vehicle in the driver's seat.
>
> JUROR VAN DEMAN: Work the gears.
>
> PROSECUTOR: Work the gears.
>
> JUROR VAN DEMAN: Start it.
>
> PROSECUTOR: Start it. Start it. Work the gears, key in the ignition, driver's seat. Those actions to affect the functioning of the vehicle. It's operating. Does not have to be rolling down the street or pulled over on the shoulder. Car doesn't even have to be in motion. It does not have to be moving down a road. It's operating the vehicle.

Appellant argues that Eastland was ineffective because the prosecutor's voir dire contained improper commitment questions and improper comments on an undefined term, and Eastland's failure to object or address them left the jury no option but to find that Appellant was "operating" the vehicle.[1]

---

[1] The evidence at trial shows that Appellant entered the driver's side of his vehicle, started the engine, and placed the vehicle in reverse gear before the police approached him. Appellant appealed from his conviction, and this

Appellant offers no reason why this ineffectiveness ground could not be resolved without an evidentiary hearing, and we conclude that it could. Regarding Eastland's failure to object to the prosecutor's giving a definition of the term "operate," the trial court could have reasonably determined based on its recollection of the trial that the error, if any, did not render Eastland's performance deficient because it was not so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b); ***Strickland***, 466 U.S. at 687-89, 104 S. Ct. at 2064-65. Alternatively, even if the trial court determined that Eastland's performance was deficient by failing to object, it could have reasonably concluded based on its recollection of the trial that the deficiency did not result in prejudice to the defense. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b); ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064. Despite Appellant's assertion that Eastland never addressed the State's definition of the term "operate," Eastland developed a contrary understanding of the term in his voir dire, when the following exchange occurred:

> EASTLAND: [The prosecutor] asked y'all about operating a vehicle. What's the common conception of operating when you think of somebody operating a vehicle? What do you see in your mind, Ms. Tenney?
>
> JUROR TENNEY: Driving down the road.
>
> EASTLAND: Driving down the road. Okay. How about you Ms. Warren?
>
> JUROR WARREN: Same.
>
> EASTLAND: Okay. Mr. Crist?
>
> JUROR CRIST: Same.

Based on Eastland's voir dire and the lack of a definition in the jury charge, the jury could conclude that the term is statutorily undefined. Under these circumstances, we presume that the jury attached a common understanding to the meaning of the term regardless of the definition stated by the prosecutor in voir dire. *See **McAfee***, 467 S.W.3d at 641 (presumption jury attached common understanding to meaning of "wrong" despite prosecutor's definition of term in voir dire). For these reasons, we conclude that this part of Appellant's first ground was resolvable without an evidentiary hearing.

---

Court affirmed. *See **Nichols v. State***, No. 12-17-00374-CR, 2018 WL 5023623 (Tex. App.—Tyler Oct. 17, 2018, pet. ref'd) (mem. op., not designated for publication).

Regarding the alleged improper commitment questions, we conclude this part of Appellant's first ground was likewise resolvable without an evidentiary hearing. Commitment questions are impermissible unless the law requires a commitment. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011). A commitment question is one that commits a prospective juror to resolve or refrain from resolving an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions often require a "yes" or "no" answer that commits the juror to resolve an issue in a particular way. *Id.* However, open-ended questions may also be commitment questions if they prompt a prospective juror to set hypothetical decision-making parameters. *Id.* at 180.

When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* at 181. For a commitment question to be proper, one of the possible answers must give rise to a valid challenge for cause. *Id.* at 182. However, an otherwise proper commitment question may nevertheless be improper if it includes facts in addition to those necessary to establish a challenge for cause. *Id.*

Improper commitment questions are considered harmful when they result in the trial of a defendant by a juror who prejudged him or some aspect of his case before hearing any evidence. *Sanchez v. State*, 165 S.W.3d 707, 714 (Tex. Crim. App. 2005). Factors to consider in determining such harm include, but are not limited to,

(1) whether the questions were unambiguously improper and attempted to commit one or more veniremen to a specific verdict or course of action;

(2) how many, if any, veniremen agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence;

(3) whether the veniremen who agreed to commit themselves actually served on the jury;

(4) whether the defendant used peremptory challenges to eliminate any or all of those veniremen who had committed themselves;

(5) whether the defendant exhausted all of his peremptory challenges upon those veniremen and requested additional peremptory challenges to compensate for their use on improperly committed veniremen;

(6) whether the defendant timely asserted that a named objectionable venireman actually served on the jury because he had to waste strikes on the improperly committed jurors; and

(7) whether there is a reasonable likelihood that the jury's verdict or course of action in reaching a verdict or sentence was substantially affected by the State's improper commitment questioning during voir dire.

6

*Id.*

The prosecutor's questions here might be considered commitment questions because they prompted the prospective jurors to set hypothetical decision-making parameters. *See id.* at 180. And if so, they are improper because no possible answer would give rise to a challenge for cause. *See id.* at 182. Nonetheless, the trial court could have resolved the issue against Appellant without an evidentiary hearing. Relying on its recollection of the proceedings, the trial court could have determined that counsel's error by failing to object, if any, did not render his performance deficient because the error was not so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b); *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Alternatively, even if the trial court determined that counsel's performance was deficient, it could have determined based on its recollection that the deficient performance did not prejudice Appellant's defense and rejected the claim on that basis. *See id.*; *see also Sanchez*, 165 S.W.3d at 714.

Because the trial court could reach reasonably correct results regarding Appellant's first alleged habeas ground without an evidentiary hearing, we conclude that the trial court did not err by denying an evidentiary hearing on that ground. *See Davila*, 530 S.W.2d at 545; *Salazar*, 510 S.W.3d at 627. Accordingly, we overrule Appellant's first issue.

## Ground Five—Failure to Request a Hearing on Juror Misconduct

In Appellant's second issue, he argues that the trial court erred by denying an evidentiary hearing on the issue of Eastland's failure to request testimony from jurors regarding potential juror misconduct. In a criminal case, any private communication, contact, or tampering with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial if not made in pursuance of known rules, instructions, and directions of the court with full knowledge of the parties. *Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 451, 98 L. Ed. 654 (1954). The presumption is not conclusive, but the burden rests heavily upon the state to establish that such contact with the juror was harmless to the defendant. *Id.*

After the jury in this case was seated, the trial court admonished them as follows:

> [H]ere's what I want you to understand that is critical to the functioning of our system. It is absolutely imperative that your decision in this case be based only on what you hear in this courtroom and only on what you hear when the attorneys are present, [Appellant] is present, the court reporter is present making a record of it. Anything else whether it's on social media or in the newspaper, on the radio, on television, anything else if it's private investigation that you do, looking

7

words up in the dictionary, googling things, anything else, any other source of information for you on this is inappropriate. If you'll keep that in mind, then we'll be just fine.

I know you don't know anything except—anything specific about the case at this point, but I will tell you do not look anything up. Don't look—don't do any kind of independent investigation. If you've got a phone or social media account, you can say that you've been selected to sit on a jury. You can tell the folks at home or your employers, I've been selected to sit on a jury, and this is when we expect we'll be done with our work. But beyond that, don't discuss the case or anything about the case with anyone even among yourselves. Don't allow anyone to talk to you about your service as jurors. And if somebody does, if somebody approaches you directly, let Deputy Whitmore—he's down the hall. Let Deputy Whitmore or myself know that immediately, and we'll take appropriate action.

The record indicates that on the morning of the second day of trial, a discussion was had off the record regarding a witness who was seen speaking to a juror. When the jury was brought in, the trial court gave the following admonishment:

I want to give—remind you of instructions that I've previously given you. This is a very small area that we're given to work in. It's very combined or confined. You're going to find yourself inadvertently around people that are involved in the trial. Those folks are instructed that they're not to have any communication with you, and it may be that you know those people from outside this experience. And it may seem unusual or awkward for them not to engage in conversation with you. But they're directed not to, and the purpose of that is to avoid even the appearance that there might be some improper relationship between the participants in the trial and those of you on the jury. I'm going to ask that you please understand and not be offended when those folks respond to you that way. It's okay to exchange casual greetings with these people. They—you know, good morning, what is the weather, like the rain. That kind of thing is not a problem, but beyond that, they won't engage you, and if they attempt to, then I'll ask you to remind them that you're a juror and not to engage in that conversation.

That afternoon, the State asked to put related testimony on the record. Anderson County First Assistant District Attorney Scott Holden, who was not involved with the case, testified that he and Investigator Kathy Stoner saw Palestine Police Officer Brandon Nicholson, a witness in the case, talking to someone wearing a juror badge in the hallway. He further testified as follows:

Kathy motioned him to follow us into the courthouse, come with us. It's not about the trial. We step inside, immediately tell him what are you doing, you're not supposed to be talking with a juror. And he said, Well, he's been a friend of mine. I don't think he said it was for a very long but for years, but they've known for—Were you talking about the trial? You cannot talk to a juror under any circumstances, stop talking to him right now, and I'm going to go tell the attorneys.

Following Holden's testimony, Eastland asserted to the court,

I've known Mr. Holden for years. If he said that he talked to the witness and the witness related to

8

him what he just related to us, I have no questions. They were just being friends as long as they were not talking about the case.

The prosecutor told the court that Nicholson said he talked to another juror about the Las Vegas shooting. She did not request further action from the court on the matter, opining that the court's additional admonishment was satisfactory. Eastland agreed.

As in the previous issue, Appellant offers no reason why this ineffectiveness ground could not be resolved without an evidentiary hearing, and we conclude that it could. Relying on its recollection of the proceedings, the trial court could have determined that Eastland did not err by failing to request testimony from the jurors. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b). The jurors were admonished about outside influences, and there was no indication that the conversations with Officer Nicholson were about the trial. *See Remmer*, 347 U.S. at 229, 74 S. Ct. at 451 (proscribing communication with jurors "about the matter pending before the jury"). Furthermore, the trial court could have determined based on its recollection of the proceedings that counsel's error by failing to request juror testimony, if any, did not render his performance deficient because the error was not so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b); *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Finally, even if the trial court determined that counsel's performance was deficient, it could have determined based on its recollection that the deficient performance did not prejudice Appellant's defense and rejected the claim on that basis. *See id.*

Because the trial court could reach reasonably correct results regarding Appellant's fifth alleged habeas ground without an evidentiary hearing, we conclude that the trial court did not err by denying an evidentiary hearing on that ground. *See Davila*, 530 S.W.2d at 545; *Salazar*, 510 S.W.3d at 627. Accordingly, we overrule Appellant's second issue.

## Ground Six—Prejudicial References to and Testimony from Appellant

In Appellant's third issue, he argues that the trial court erred by denying an evidentiary hearing on the issue of Eastland's prejudicial references to him at trial and eliciting of unnecessary prejudicial testimony from him. Appellant contends that his defense was prejudiced when Eastland asked his age and the age he started drinking. He contends that his defense was further prejudiced when Eastland made the following statements during closing arguments: (1) "The second thing I want to do is apologize for [Appellant] because he wasn't too much different today

than he was on the video except today he didn't have four pints of beer," (2) "If you want to find [Appellant] guilty of being argumentative, disrespectful . . . uncooperative, defensive, vulgar speech, I'm right with you," (3) "[H]e's a really nice guy if he doesn't talk too much. He's uncooperative, defensive, argumentative, and vulgar speech. I wanted to stand up and say, Charlie stop being a lawyer, just answer the dang question," (4) "I place the blame for him getting arrested on him," (5) "So as far as the DWI case, don't trust [Appellant]," (6) "[Appellant] screwed up with his attitude. And you may not like [Appellant]. You may think he's arrogant. I wouldn't disagree with you on that," (7) "[Appellant] screwed it up," (8) "Folks, we all can find him guilty of being argumentative, obnoxious, anything like that," (9) "Quite frankly, when he got—when he was on the stand, I was mad. Still aggravated at him," (10) "But when you get a lawyer who's been drinking in a car that's cranked up and in gear and an officer knocks on your window, what do you think?" and (11) "He's just obnoxious."

Appellant additionally asserts in his brief that Eastland's tone of voice and facial expressions were "every bit as prejudicial as the words that he spoke." However, we do not consider this assertion because it is not proper for an appellate court reviewing a trial court's decision to rely upon information that is not in the appellate record. TEX. R. APP. P. 34.1 (appellate record consists of clerk's record and reporter's record); *see also* **Vargas v. State**, 838 S.W.2d 552, 556 (Tex. Crim. App. 1992) (refusing to consider comparison information not in evidence in **Batson** challenge review); **Haner v. State**, 339 S.W.2d 212 (Tex. Crim. App. 1960) ("This Court is bound by the record as made and certified by the trial court.")

In support of his argument that Eastland's "prejudicial" questions and statements rendered his counsel ineffective, Appellant cites three cases. *See* **Ex parte Guzmon**, 730 S.W.2d 724 (Tex. Crim. App. 1987); **Ramirez v. State**, 65 S.W.3d 156 (Tex. App.—Amarillo 2001, pet. ref'd); **Miller v. State**, 728 S.W.2d 133 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). In *Guzmon*, the court of criminal appeals held defense counsel's assistance ineffective based on many facts. *See Guzmon*, 730 S.W.2d at 733-34. Defense counsel referred to the defendant as a "wetback" throughout the trial. *Id.* at 733. Some venirepersons who expressed doubt that an illegal alien is entitled to all the protections of a United States citizen served on the jury. *Id.* When the defendant testified, defense counsel did not ask questions but instead allowed him to ramble. *Id.* Instead of properly interpreting the defendant's testimony verbatim, the interpreter paraphrased it. *Id.* And

10

defense counsel had difficulty communicating with the defendant prior to trial even with an interpreter. *Id.*

In *Ramirez*, a child sexual assault case, the court of appeals held defense counsel's assistance ineffective in part because defense counsel failed to object to evidence of the defendant's drinking habit. *See Ramirez*, 65 S.W.3d at 160. Defense counsel further used the phrase "drunk Mexican" while talking about the defendant and was silent when the State mischaracterized his statement as saying the defendant was a "drunk Mexican" and labeled him as such. *Id.*

In *Miller*, the court of appeals concluded that defense counsel committed many errors, the aggregate of which prejudiced the defense. *Miller*, 728 S.W.2d at 135. These errors included arguing with venirepersons, making baseless offensive arguments, attacking a witness based on his country of origin, failing to timely discover that the trial judge previously represented the defendant, and many other unspecified errors. *Id.* at 134-35.

While these cases support the proposition that a defense counsel's disparaging references to the defendant or a witness may be considered when reviewing counsel's effectiveness, they do not compel a finding of ineffective assistance of counsel in this case. First, each of the cited cases involves racial slurs, which are not present in this case. Second, each of the cited cases involves factors in addition to the disparaging references that are not present in this case. Finally, unlike the disparaging references in the cited cases, the references in this case were based on admissible evidence that was before the jury and appear to be part of a trial strategy to mitigate the effects of that evidence on the verdict. The record shows that Appellant was confrontational with the arresting officers. During the investigation and arrest, Appellant cursed, refused to follow commands, and tried to intimidate the officers by saying—falsely—that he was the city attorney. It appears that Eastland's strategy was to acknowledge Appellant's offensive demeanor but discourage the jury from convicting him on that basis.

Other factors weigh against Appellant's argument as well. First, besides acknowledging Appellant's poor attitude, Eastland also said Appellant is a decent person and he likes him. Second, regarding the statement of "Don't trust [Appellant]," the remainder of the statement was, "but listen to his brother." Appellant's brother testified that he and Appellant agreed Appellant would call him for a ride when he was ready to leave, supporting Appellant's testimony that he was only moving his car to a safer location in the parking lot while he waited for his brother. In this context,

11

a fair interpretation of the statement "Don't trust [Appellant]" is, "You don't have to trust Appellant" rather than "Appellant is untrustworthy." Finally, regarding Eastland's questions about Appellant's age and the age he started drinking, there is an apparent trial strategy behind them as well. After asking those questions, Eastland elicited testimony that Appellant was never previously arrested and had procured rides home many times. The implication of such testimony is that although Appellant consumed alcohol for many years, he has been responsible about driving while intoxicated, and was being responsible on this occasion as well.

As in the previous issues, Appellant offers no reason why this ineffectiveness ground could not be resolved without an evidentiary hearing, and based on the record before us, we conclude that it could. Relying on its recollection of the proceedings, the trial court could have reasonably determined that Eastland's counsel was not ineffective because (1) his questions and comments were not error but sound trial strategy, (2) his error, if any, did not render his performance deficient because it was not so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, or (3) the deficient performance did not prejudice Appellant's defense. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b); *Strickland*, 466 U.S. at 687-89, 104 S. Ct. at 2064-65; *Tong*, 25 S.W.3d at 712.

Because the trial court was able to reach reasonably correct results regarding Appellant's sixth alleged habeas ground without an evidentiary hearing, we conclude that the trial court did not err by denying an evidentiary hearing on that ground. *See Davila*, 530 S.W.2d at 545; *Salazar*, 510 S.W.3d at 627. Accordingly, we overrule Appellant's third issue.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered April 22, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 22, 2020

NO. 12-19-00327-CR

EX PARTE: CHARLES WILLIAM NICHOLS

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. 13518)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*